*In re* MARVIN JOHNSON, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* MARVIN BELTON, Respondent-Appellant.)

First District (5th Division) Nos. 79-2028, 80-2070 cons.

Opinion filed December 28, 1981.

Ralph Ruebner, of State Appellate Defender's Office, of Chicago (Mary M. McCormick, of Northwestern University Legal Clinic, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Joan Cherry, Alphonse R. Tomaso, Richard F. Burke, and John A. Witten, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MEJDA delivered the opinion of the court:

Appellant, the father of Marvin Johnson (the minor), appealed orders of the trial court finding his son neglected, adjudging him a ward of the court, finding appellant unfit and appointing Richard S. Laymon guardian with right to place. Subsequent to the filing of appellant's appeal from those orders, the trial court entered another order finding the mother fit and returning the minor to her. Appellant also filed an appeal from this order. These two cases have been consolidated for purposes of this appeal.

The issues raised in these appeals are: (1) whether the trial court erred in accepting an admission from appellant at the adjudicatory hearing without first appointing independent counsel to represent him; (2) whether the trial court erred in refusing to grant appellant's motion to withdraw his stipulation of facts and admission; (3) whether the trial court erred in refusing to grant appellant's motion for a new trial; and (4)

whether the trial court had jurisdiction to enter its order finding the mother fit and placing the minor with his mother.

A neglect petition was filed on behalf of the minor. The petition alleged in pertinent part that the minor was born September 9, 1977, that he had numerous first degree burns over his buttocks, penis, scrotum and legs, which according to medical opinion were consistent with burns inflicted with cigarettes; that on or about May 31, 1978, the minor's mother stated that appellant, Marvin Belton, also known as Marvin Jones, inflicted the burns on the minor; that on or about May 31, 1978, a relative of the minor alleged that the mother had caused the injuries; that on or about May 31, 1978, a neighbor of the mother alleged that she had witnessed the mother inflicting the injuries on the minor; that on or about March 31, 1978, the minor was treated for a fracture of the left humerus; and that the minor had been injured on that date when the mother and Marvin Belton fought over him. The petition requested that Richard S. Laymon be appointed temporary custodian of the minor; that the temporary custodian be ordered not to return him to the custody of his mother, and that he be adjudged a ward of the court, and for other relief appropriate under the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 701—1 *et seq.*).

On June 2, 1978, a temporary custody hearing was held at which a guardian ad litem was appointed for the minor. The guardian ad litem was also appointed to serve as counsel for the minor. The Cook County Public Defender was appointed as counsel for the mother and was also appointed as her guardian ad litem because she was 15 years of age. The mother testified that the father of the minor was Marvin Lee Burton. The petition was amended to show Marvin Burton[1] as the father of the child. Temporary custody of the minor was given to Richard S. Laymon and a social investigation was ordered. The case was continued to June 23, 1978.

On June 23, 1978, the appellant appeared without counsel at the hearing. The minor's mother stated that he was the father of the minor. The appellant also acknowledged that he was the father of the child. In response to questioning by the court, the appellant stated he was unable to afford a lawyer and that he wanted a public defender appointed to represent him. After a brief recess during which time appellant conversed with the assistant public defender, the latter told the court that he believed that "there is going to be a conflict." Appellant was then referred to Chicago Volunteer Legal Services. After the court requested the State

---

[1] The petition included in the record in No. 79-2028 was amended to show *Burton* as the father; the petition included in the record in No. 80-2070 was amended to show *Belton* as the father. No one disputes that Marvin Burton and Marvin Belton are one and the same person—appellant.

have appellant sign an appearance and waiver of service, the case was continued.

On July 7, 1978, appellant appeared before the court and advised it that Chicago Volunteer Legal Services would not accept the case. The court inquired of the assistant public defender whether a conflict existed between the mother and appellant to which the assistant public defender affirmatively responded. The court then referred appellant to a private attorney.

On August 1, 1978, the Assistant State's Attorney told the court that the parents of the child were prepared to make an admission based on a stipulation of facts as alleged in the petition. The assistant public defender reminded the court that he only represented the mother; that private counsel had been appointed for appellant, and therefore, he could not speak in appellant's behalf. The court stated to appellant that it understood that he had failed to keep his appointment with the private attorney appointed to represent him. Appellant responded that he had missed the appointment because of illness, and although unsuccessful in his efforts, had tried to reschedule it. The court asked appellant if it was true as indicated by the Assistant State's Attorney that he wished to enter an admission in the case and that he agreed to the appointment of a guardian for his son. Appellant responded affirmatively. The court then inquired of appellant if he understood that although Richard S. Laymon would be appointed the child's guardian, placement would be with the child's maternal aunt. Appellant responded that he undertood that and agreed to it. The assistant public defender stated that at the time the hearing was first set there was a conflict, but perhaps if there now was no conflict, he could also be appointed to represent appellant. The court appointed the assistant public defender to represent the father. The court then accepted the admission of both parents. The assistant public defender stipulated to the facts as alleged in the petition. The court made a finding of neglect based upon the stipulation pursuant to section 2—4(1)(b) of the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 702—4(1)(b)) and allowed the temporary custody order to stand, while referring the parents to clinical services for evaluation. The court also made a finding of best interests and an adjudication of wardship.

On November 6, 1978, the Assistant State's Attorney advised the court that the clinical services report had been completed, and that the State was seeking appointment of a guardian, with continued placement with a maternal aunt. The assistant public defender stated that neither the mother nor the father desired that a guardian be appointed for the minor and that they could not agree on any other suitable disposition. The assistant public defender requested leave to withdraw as attorney for the

mother but to continue as counsel for appellant. The court, however, referred appellant to the presiding judge for appointment of counsel. Subsequently, an attorney was appointed to represent appellant.

On March 5, 1979, appellant's attorney filed a motion to withdraw appellant's stipulation of facts and admission and to request the court to vacate its finding of neglect. The court denied appellant's motion and continued the disposition hearing to April 19, 1979.

On April 19, 1979, appellant's counsel and the mother's counsel joined in a motion for a new trial claiming that appellant had been denied effective representation at the August 1, 1978, hearing. The court denied the motion and proceeded to hear evidence at the dispositional phase of the neglect proceedings. Doris Bowie, a social worker for the Illinois Department of Children and Family Services, who had been assigned to the case of the minor since December 1978, testified on behalf of the State. She stated that in her opinion Richard S. Laymon should be appointed guardian of the minor with the right to place the child, the intended placement to be in the home of the maternal aunt. She based her opinion on her interviews with each parent and the case studies conducted by a psychiatrist with the Department of Clinical Services and a psychologist from Ebony Management. The Clinical Services report concluded that neither parent was capable of functioning as a responsible parent. The Ebony Management report concluded that the mother was not sufficiently mature to adequately care for the minor. Bowie stated that she thought it correct to say that each parent had accused the other of causing the problems.

Appellant testified that the minor was his son and that it was his desire that he be placed in his custody so that he could care for him. He stated that it was his intention to support him to the best of his ability.

The mother testified that she was a 10th-grade student at Hyde Park Career Academy. It was her desire that the minor be returned to her. She testified that she did not abuse the child in any way. If the child was returned to her, she planned to support him through public aid.

After hearing all of the evidence, the court entered a finding of unfitness and best interest, vacated the temporary custody order, and appointed Richard S. Laymon as guardian with the right to place the minor. The court informed the parents that they still remained the minor's parents with the right and duty to correct the conditions that necessitated the appointment of a guardian. At the conclusion of the April 19, 1979, hearing appellant filed a notice of appeal from the trial court's dispositional order.

On November 30, 1979, the mother of the minor filed a notice and petition for supplemental relief, requesting the trial court to vacate the

previously entered guardianship order and return custody to her. On April 1, 1980, appellant informed the court that he had filed an appeal from its prior dispositional order. On June 18, 1980, both the State and appellant argued to the court that appellant's prior appeal had divested the court of the jurisdiction necessary to amend its prior dispositional order. Counsel for the mother and the guardian ad litem argued that the court had jurisdiction to amend the previous order. The court ruled that it had jurisdiction. A supplemental hearing was then conducted in which Doris Bowie, the social worker who testified at the disposition hearing, testified that it was now her opinion that the minor should be returned to his mother's custody. A clinical evaluation completed by Dr. J. M. Whitman of the Department of Clinical Services was received into evidence. The report concluded that the minor could be safely returned to his mother. It was also stipulated that if Sidney Osborne, the mother's counselor, was called as a witness he would have recommended that the minor be returned to his mother.

After hearing the evidence the court entered a finding of fitness as to the mother with leave to return the minor to her upon receipt of the police clearance of her boyfriend with whom she was presently living. Appellant appealed the court's supplemental order. These two appeals, taken by appellant from the trial court's original April 19, 1979, order and its June 18, 1980, supplemental order were consolidated for purposes of oral argument and the issuance of this opinion.

OPINION

Appellant first contends that the trial court erred in accepting his admission at the August 1, 1978, adjudicatory hearing without first appointing independent counsel to represent him, as a conflict existed between appellant and the mother of the minor.

■■ Section 1—20(1) of the Juvenile Court Act provides that the parents of a minor who is the subject of proceedings under the Act have the right to be represented by counsel and to have the public defender or other counsel as the case may require appointed to represent them, if they are financially unable to employ counsel. (Ill. Rev. Stat. 1977, ch. 37, par. 701—20(1).) Implicit within the right to counsel is that such representation be effective. (*Powell v. Alabama* (1932), 287 U.S. 45, 77 L. Ed. 158, 53 S. Ct. 155.) An individual's right to effective assistance of counsel entitles him to the undivided loyalty of his attorney. (*In re Lackey* (1979), 71 Ill. App. 3d 705, 390 N.E.2d 519, *aff'd sub nom. People v. Lackey* (1980), 79 Ill. 2d 466, 405 N.E.2d 748.) In criminal cases co-defendants have a right to separate counsel if their positions are antagonistic. (*People v. Ware* (1968), 39 Ill. 2d 66, 233 N.E.2d 421.) Similarly, the statutory right to

counsel in juvenile proceedings is violated when one attorney is appointed to represent parties with conflicting interests. See *People v. Lackey* (1980), 79 Ill. 2d 466, 405 N.E.2d 748.

When an issue is raised as to whether a single attorney can effectively represent two defendants, the crucial determination is whether there is a conflict, since absent such conflict there is no threat to a defendant's right to the assistance of separate counsel. (*People v. Berland* (1978), 74 Ill. 2d 286, 385 N.E.2d 649, *cert. denied* (1979), 444 U.S. 833, 62 L. Ed. 2d 42, 100 S. Ct. 64.) Further, our supreme court has stated that when counsel or either of defendants before trial calls the court's attention to the possible antagonistic or conflicting positions of the two defendants and requests that separate counsel be appointed, the trial court should appoint separate counsel or at least should conduct a hearing as to the effect of the alleged conflict. (*People v. Precup* (1978), 73 Ill. 2d 7, 382 N.E.2d 227.) Applying these fundamental precepts, we consider whether appellant's right to effective counsel was violated by the appointment of the public defender to represent him, keeping in mind that instances involving appointed counsel rather than retained counsel demand closer scrutiny for conflicting interests. *People v. Stoval* (1968), 40 Ill. 2d 109, 239 N.E.2d 441; *Berland.*

It is undisputed in this case that a conflict of interest existed between appellant and the mother of the minor in all proceedings prior to and subsequent to the August 1, 1978, adjudicatory hearing, necessitating the assistant public defender, counsel for the mother, to decline on at least two occasions to also represent appellant. Additionally, the petition of wardship sets forth the antagonistic positions of appellant and the mother, as its allegations recite that each party accused the other of being the cause of the minor's injuries. However, the State contends that appellant's willingness to make the challenged admission at the August 1, 1978, hearing indicates that no conflict existed between appellant and the mother on that date. Therefore, the State maintains that appointing the mother's counsel, the assistant public defender, to represent appellant for purposes of entering his admission and stipulating to the facts of the petition was not error.

Central to a determination of this issue is the validity of appellant's admission, for it was the court's acceptance of the voluntariness of appellant's admission which prompted the court to appoint the assistant public defender as his counsel. To be valid, an admission in a Juvenile Court Act proceeding must be intelligently and voluntarily made; that is, it must be apparent from the record that the party making the admission was aware of the consequences of his admission. (See *In re Beasley* (1977), 66 Ill. 2d 385, 362 N.E.2d 1024, *cert. denied* (1978), 434 U.S. 1016, 54 L. Ed. 2d 761, 98 S. Ct. 734.) Thus, for the admission of a parent to be

valid in the adjudicatory phase of a neglect proceeding, it must be apparent from the record that the parent making the admission understood the consequences of his admission—that a finding of neglect gives the court jurisdiction of the minor who then becomes subject to the dispositional powers of the court. *In re Moore* (1980), 87 Ill. App. 3d 1117, 409 N.E.2d 435.

■■ The record in the instant case is completely devoid of any indication that appellant understood the consequences of his admission. As appellant notes, the trial court failed to point out to appellant the consequences of such an action, nor did the assistant public defender do so. Although appellant did respond affirmatively to the court's inquiry as to whether he agreed to the appointment of a guardian for his son and to whether he understood that placement would be with the child's aunt, his response does not indicate that he understood the consequences of his admission, as the petition for adjudication also failed to apprise the appellant of the possibility of losing any of his parental rights. The petition only requested "temporary custody" of Marvin and "other appropriate relief." Accordingly, we believe that the record does not demonstrate the appellant's admission was intelligently or voluntarily made and that he understood the consequences of his admission.

■■ Because appellant's admission was not knowingly and intelligently made, the admission standing alone was insufficient to establish that the conflict of which the court had been well aware no longer existed. As the trial court without further inquiry rested its determination that no conflict existed between the parties solely on the admission, we agree with appellant's contention that under the facts of this case the appointment of one counsel to represent appellant and the mother of the minor at the August 1, 1978, adjudicatory hearing was erroneous.

However, this determination does not necessarily require the reversal of the trial court's neglect finding, for a trial court's determination in a child neglect case will not be disturbed unless there has been an abuse of discretion or the judgment is against the manifest weight of the evidence. (*In re Stilley* (1977), 66 Ill. 2d 515, 363 N.E.2d 820.) Furthermore, in cases involving custody of children an even broader discretion will be accorded the trial court than in any ordinary appeal to which the familiar manifest weight principle is applied. *In re Martin* (1975), 31 Ill. App. 3d 288, 333 N.E.2d 711.

Under the Juvenile Court Act a child is neglected if his or her "environment is injurious to his welfare * * *." (Ill. Rev. Stat. 1977, ch. 37, par. 702—4(1)(b).) Generally, "neglect" is the failure to exercise the care that circumstances justly demand and it embraces wilful as well as unintentional disregard of parental duty. (*In re Stilley.*) Neglect must be proved by a preponderance of the evidence (Ill. Rev. Stat. 1977, ch. 37,

par. 704—6; *In re Brooks* (1978), 63 Ill. App. 3d 328, 379 N.E.2d 872), but physical abuse alone will support a finding of neglect. (*In re Jackson* (1980), 81 Ill. App. 3d 136, 400 N.E.2d 1087.) The sole admission of the custodial parent as to the allegations of the neglect petition may be sufficient to sustain a finding of neglect by the trial court. See *In re Wheat* (1979), 68 Ill. App. 3d 471, 386 N.E.2d 278. ·

■■ In this case the trial court's finding of neglect was based not only on the stipulation of facts entered into by appellant, but also upon that entered into by the minor's mother, the custodial parent. Her stipulation alone is sufficient to support the finding of neglect by the court and its adjudication of wardship. Furthermore, as the issue at the adjudicatory hearing was whether Marvin was neglected and not the fitness of his parents to care for him (Ill. Rev. Stat. 1977, ch. 37, par. 704—6), we do not find the appointment of the public defender to represent him so prejudicial within the context of the adjudicatory hearing as to warrant reversal of the neglect finding we have determined to be supported by the evidence.

Appellant next asserts that the trial court improperly denied his section 72 motion requesting that his admission and stipulation of facts be withdrawn and that the court's finding of neglect at the August 1, 1978, adjudicatory hearing be vacated. (Ill. Rev. Stat. 1979, ch. 110, par. 72.) The motion again asserted as grounds for the vacation of the neglect finding the impropriety of appointing the mother's attorney, the public defender, to represent him for purposes of entering the stipulation. This motion was filed on March 5, 1979, seven months after the entry of the court's August 1, 1978, adjudicatory order and prior to the April 19, 1979, dispositional hearing.

Section 72 provides a procedure by which final orders and judgments may be vacated or modified more than 30 days from their entry. (Ill. Rev. Stat. 1979, ch. 110, par. 72.) An order of the trial court which leaves a cause still pending and undecided is not a final order. (*Oak Brook Bank v. Citation Cycle Co.* (1977), 45 Ill. App. 3d 1053, 360 N.E.2d 458.) Before an order can be deemed final it must be dispositive of the issues and rights of the litigants. (*La Vida, Inc. v. Robbins* (1961), 33 Ill. App. 2d 243, 178 N.E.2d 412.) An adjudication of wardship is not a final order for purposes of appeal (*In re Lee* (1979), 73 Ill. App. 3d 449, 392 N.E.2d 304), although Supreme Court Rule 662(a) allows an appeal from an adjudication of wardship in the event that an order of disposition has not been entered within 90 days of the adjudication of wardship (Ill. Rev. Stat. 1977, ch. 110A, par. 622(a)).

■■ The August 1, 1978, order finding neglect and adjudicating wardship was not a final order, and therefore a section 72 motion was an improper vehicle to challenge it. However, as an interlocutory order may be

vacated or modified at any time before final judgment (*Leopold v. Levin* (1970), 45 Ill. 2d 434, 259 N.E.2d 250), and as the trial court denied appellant's motion on the merits, we will reach the merits of the court's denial of appellant's motion despite its section 72 label.

We have already determined that the appointment of the public defender at the adjudicatory hearing to represent appellant was errone-ous. Therefore, the trial court should have granted that portion of appellant's motion seeking to withdraw the stipulation of facts entered by the public defender. However, as we have also previously concluded that the court's finding of neglect was not against the manifest weight of the evidence and that the appointment of the public defender to represent him was not so prejudicial to warrant reversal of that finding, the trial court properly denied that portion of appellant's motion petitioning the court to vacate the finding of neglect.

We next consider whether the trial court's improper denial of that portion of appellant's motion seeking to withdraw his admission and his stipulation of facts requires a new dispositional hearing. After adjudging a minor a ward of the court, the court proceeds to the dispositional hearing and hears evidence on the question of the placement best serving the interests of the minor and the public. (Ill. Rev. Stat. 1979, ch. 37, par. 705—1.) If the court finds that the parents of a minor adjudged a ward of the court are unfit or unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor and it is in the best interests of the minor to take him from the custody of his parents, the court may do so. Ill. Rev. Stat. 1979, ch. 37, par. 705—7.

■■ At the dispositional proceeding the trial court conducted a full hearing on the issue of the best placement for the minor. The State offered evidence showing that the social worker assigned to the case, and a psychiatrist and a psychologist who conducted case studies of the parents, all concluded that neither appellant nor the minor's mother was capable of functioning as a responsible parent. From our review of the record, appellant, represented by independent counsel during the entire dispositional hearing, neither rebutted nor discredited this evidence. We note further that the dispositional order did not terminate either parent's parental rights but rather vested legal custody of the minor in the guardian. Although evidence may indicate that a parent is not fit to have custody of his child, it does not automatically follow that the parent is not fit to be the child's legal parent. (*In re Hurley* (1976), 44 Ill. App. 3d 260, 357 N.E.2d 815.) As such we cannot say, even absent appellant's stipula-tion, that the trial court's finding of unfitness and its appointment of a guardian with the right to place the minor was against the manifest weight of the evidence; and we note that appellant fails to so argue.

Appellant also asserts that the trial court improperly denied his

motion for a "new trial" made on April 19, 1979, just shortly before the dispositional hearing was conducted. Again appellant asserted he had been denied effective representation of counsel at the August 1, 1978, adjudicatory hearing. We conclude that appellant's motion for a new adjudicatory hearing was properly denied, however, for those reasons previously discussed relative to the denial of his motion to vacate the finding of neglect.

Finally, appellant asserts that the trial court was without jurisdiction to enter its order of June 18, 1980. After appellant had filed his appeal from the trial court's April 19, 1979, order, the minor's mother filed a supplemental petition in the trial court. The petition prayed the court to vacate its previous guardianship order and return the minor to her. After overruling appellant's objection to the jurisdiction of the court to entertain the petition, the court conducted a hearing on the matter. The court entered an order on June 18, 1980, finding the mother fit and returning the minor to her. Appellant contends that his notice of appeal from the April 19, 1979, order divested the court of jurisdiction to enter the June 18, 1980, order.

Generally, once the jurisdiction of the appellate court attaches by reason of the filing of a notice of appeal, the trial court is without jurisdiction to take any further action insofar as the notice affects the subject that the trial court might seek to act upon. (*Cygnar v. Martin-Trigona* (1975), 26 Ill. App. 3d 291, 293, 325 N.E.2d 76, 78.) Thus, once an appeal has been duly filed, the trial court is restrained from entering any order which would change or modify the judgment or its scope, and from entering any order which would have the effect of interfering with the review of the judgment. *Dunn v. Dunn* (1979), 71 Ill. App. 3d 649, 390 N.E.2d 136.

■■ However, we also recognize that when a parent has been deprived of the custody of his child at a time when the child is declared neglected, the court's jurisdiction is a continuing one. (*Oeth v. Erwin* (1955), 6 Ill. App. 2d 18, 126 N.E.2d 526.) Furthermore, unless it expressly so provides, the dispositional order does not operate to close proceedings on the petition and it is always subject to modification by the court until a final closing or discharge of the proceedings pursuant to section 5—11 of the Juvenile Court Act. (Ill. Rev. Stat. 1977, ch. 37, pars. 705—2(3), 705—11.) That section provides that proceedings are terminated (1) automatically when the minor attains 21 years of age, or (2) when the court orders the wardship terminated and the proceedings discharged when it is in the best interests of the minor. (Ill. Rev. Stat. 1979, ch. 37, pars. 705—11(1), 705—11(2).) Neither event occurred here; therefore, the proceedings were not terminated by the entry of the April 19, 1979, dispositional order.

Additionally, a parent who has lost custody may later petition the court for restoration of custody. (Ill. Rev. Stat. 1977, ch. 37, par. 705—8.) The scope of the challenged June 18, 1980, order was limited to a finding of the mother's fitness and the placement of the minor with her. The order did not disturb the court's previous findings of neglect or appellant's unfitness, nor terminate the guardianship or wardship.

The question of the trial court's jurisdiction to enter its April 1, 1980, order finding the mother fit is resolved by *Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 394 N.E.2d 380. There our supreme court stated:

> "In any event, the notice of appeal must conform to the requirements of our Rule 303(c)(2) in that it must 'specify the judgment or part thereof appealed from.' When a notice of appeal is perfected the trial court loses jurisdiction as to the judgment or part thereof from which the appeal is taken and, as to such matter, the case thereafter proceeds in the appellate court not as a new case but as a continuation of the case in the trial court.
>
> * * *
>
> When an appeal is taken from a specified judgment only, or from a part of a specified judgment, the court of review acquires no jurisdiction to review other judgments or parts thereof not so specified or not fairly to be inferred from the notice as intended to be presented for review on the appeal. If from the notice of appeal itself and the subsequent proceedings it appears that the appeal was intended, and the appellant and the appellee so understood, to have been taken from an unspecified judgment or part thereof, the notice of appeal may be construed as bringing up for review the unspecified part of the order or judgment." 76 Ill. 2d 427, 433-34.

■■ In this case appellant's notice of appeal from the April 19, 1979, order specified as the judgment appealed from: "Guilty of Child Abuse, on a finding of neglect pursuant to stipulation of fact and admission per Chapter 37, Section 702—4(1)(b) and adjudication of wardship pursuant to stipulation of fact and admission." Appellant's briefs to the court specified as point for reversal (1) the appointment of a single counsel to represent him and the mother of the minor, (2) the acceptance of appellant's admission, (3) the failure to strike his admission and stipulation, and the failure to vacate the neglect finding, and (4) the failure to grant a new adjudicatory hearing. A consideration of appellant's notice of appeal and the proceedings in this court establishes his first appeal was taken from the court's finding of neglect, his unfitness, the adjudication of wardship and guardianship. It further establishes that appellant did not appeal nor intend to appeal from that portion of the April 19, 1979, order

finding the mother unfit. Therefore, the trial court was not divested of its continuing jurisdiction to consider anew the issues of the mother's fitness and that placement which would be in the minor's best interest. *Burtell.*

■■ Finally, appellant asserts that if the court had the jurisdiction to enter its April 1, 1980, order, it abused its discretion in doing so. We disagree. The court had jurisdiction in the matter and we believe was duty bound to exercise it here to facilitate the stated purpose of the Juvenile Court Act—"to secure for each minor subject hereto such care and guidance, preferably in his own home, as will serve the moral, emotional, mental, and physical welfare of the minor and the best interests of the community ° ° °." Ill. Rev. Stat. 1979, ch. 37, par. 701—2.

Accordingly, for the reasons cited herein, we affirm the April 19, 1979, and June 18, 1980, orders of the trial court.

Orders affirmed.

SULLIVAN, P. J., and LORENZ, J., concur.