784 N.E.2d 400 (2003)
336 Ill. App.3d 606
271 Ill.Dec. 182
In re R.B., a Minor (The People of the State of Illinois, Petitioner-Appellee,
v.
Gaston Butler, Respondent-Appellant).
No. 4-02-0498.
Appellate Court of Illinois, Fourth District.
Argued December 18, 2002.
Decided February 4, 2003.
*401 James B. Kuehl (Court-appointed), Thomas A. Bruno & Associates, Urbana, for Gaston Butler.
John C. Piland, Champaign County State's Attorney, Urbana, Norbert J. Goetten, Director, Robert J. Biderman, Deputy Director, Linda Susan McClain, Staff Attorney, State's Attorneys Appellate Prosecutor, Springfield, for the People.
Justice STEIGMANN delivered the opinion of the court:
In December 2001, the State filed a petition, alleging that R.B. (born October 2, 1999), the minor child of respondent, Gaston Butler, was a neglected minor under section 2-3(1)(b) of the Juvenile Court Act of 1987(Act) (705 ILCS 405/2-3(1)(b) (West 2000)) because her environment was injurious to her welfare when she resided "with [her parents] Sonja Caston and/or Gaston Butler in that said environment exposes" R.B. to the risk of domestic violence. Following adjudicatory hearings in February and March 2002, the trial court found that R.B. was a neglected minor. Following a May 2002 dispositional hearing, the court adjudicated R.B. a ward of the court, appointed the Department of Children and Family Services (DCFS) as her guardian, and ordered her removed from the custody of both Caston and Butler.
Butler appeals, arguing that the trial court (1) improperly accepted Caston's *402 stipulation as evidence against him; (2) violated his fourteenth amendment right to fundamentally fair procedures; and (3) made a decision that was contrary to the manifest weight of the evidence. We affirm.

I. BACKGROUND
R.B. was the two-year-old daughter of Butler and Caston when the State filed its December 2001 neglect petition. In response to that petition, the trial court appointed counsel for R.B., directed the circuit clerk to issue summons for all parties, and allotted the case for a January 22, 2002, admonition hearing. The court also set the case for an adjudicatory hearing on February 26, 2002.
At the January 22, 2002, admonition hearing, Caston appeared personally, but Butler did not. The trial court (1) received a new address for Butler, (2) amended the neglect petition accordingly, (3) allotted Butler's admonition hearing for February 21, 2002, and (4) directed new summons to issue for Butler with the new admonition hearing date. The court also granted Caston's motion for appointed counsel and reaffirmed February 26, 2002, as the date for the adjudicatory hearing.
On February 21, 2002, the trial court called the case for Butler's admonition hearing, but neither Butler nor anyone on his behalf appeared. The court directed alias summons to issue for Butler and reaffirmed the February 26, 2002, date for the adjudicatory hearing.

A. The Initial Phase of the Adjudicatory Hearing
On February 26, 2002, when the trial court called the case for adjudicatory hearing, the following people were present: Caston, Caston's counsel, R.B.'s counsel, the prosecutor, and Butler, who appeared for the first time. The court's discussion with Butler revealed that one of the notices sent to him at his address in Matteson, Illinois, successfully reached him. The court informed Butler of the allegations in the State's neglect petition and appropriately explained the State's burden of proof and Butler's rights during the proceedings. The court also informed Butler that he had the right to be represented by counsel and that one would be appointed for him if he could not afford to hire an attorney of his own choice. Butler stated that he was not able to hire an attorney and would like to have one appointed for him. The court granted his request and appointed an assistant public defender to represent him. However, that counsel was not then present in court.
The following discussion then occurred between the trial court, Butler, and some of the other parties:
"THE COURT: Mr. Butler, you did not appear previously, and so this is the first time that you are here. This is the date set for that adjudicatory hearing for the presentation of evidence; you understand that?
[BUTLER]: Yes, ma'am.
THE COURT: Are you able to go forward today even though your counsel cannot be here because I've just appointed him, he had no advance notice of this?
[BUTLER]: I don't believe that I could because I don't know what rights or anything that I do have, and I would like to speak with somebody to get counsel.
[THE PROSECUTOR]: People object to the motion to continue.
THE COURT: And
[CASTON'S COUNSEL]: For the record I would also object[, noting] that [Caston] is eight months pregnant and she's come from the Chicago area, notwithstanding the weather.

*403 * * *
THE COURT: I note the somewhat unusual circumstances in this [case]. I note that extensive efforts were made to try and contact Mr. Butler so that he could be here previously.
And in fact the court had ordered summons to issue, also ordered notice by publication early on in case that notice, in case the summons could not be served.
I take note of the circumstances. The court is going to deny the motion for a continuance, and I rely particularly on the efforts of [Caston] to be present today, in spite of what was close to blizzard-like conditions, the court taking note of the weather conditions outside. Mr. Butler, at this point I'm going to proceed. The court will treat liberally any motions your attorney may feel are necessary after the fact, and I note also the subpoenaed witnesses are present. I'm going to allow [the prosecutor] to proceed at this time."

B. The Factual Basis for Caston's Admission and Stipulation
Later during the adjudicatory hearing, Caston offered to admit and stipulate to the neglect allegation in the State's petition. In support of Caston's offer, the prosecutor presented as a factual basis People's exhibit No. 1, which consisted of the reports of two Champaign police officers regarding an incident they responded to on September 17, 2001. The State offered that exhibit to demonstrate that the environment in which R.B. resided when she lived with Caston and Butler exposed her to the risk of domestic violence. The prosecutor noted that the officers whose reports made up People's exhibit No. 1 were present in court and ready to testify if needed. The prosecutor also indicated that to further show a factual basis, the parties agreed that the trial court could consider the verified petition Caston signed following the September 17, 2001, incident, in which she sought an order of protection against Butler. The court accepted Caston's admission and stipulation and accepted as a factual basis for it the police reports in People's exhibit No. 1 and Caston's sworn statement in the order of protection case. (We note that although the court referred to Caston's sworn statement, it is not contained in the record on appeal.)
The first police report stated that on the date in question, Champaign police officer Randy Beech responded to a domestic disturbance call at Caston and Butler's residence. Caston stated that she, R.B., and J.A., who was Caston's 10-year-old daughter by another man, were watching television when Butler walked into the back bedroom and asked where his belongings were. She told him that she had packed them up because she wanted him to move out. He said he was not going to leave, started to argue with her, and then choked her until she blacked out. She did not awaken until the police were present. Caston informed the officers that she feared for her life and was afraid of Butler. The officers saw scratches and marks on her neck. When Beech arrived, J.A. was in the apartment and "crying uncontrollably."
The report of Champaign police officer Russell Beck was substantially similar to Beech's report, but it contained some additional details. It noted that (1) Caston was then six to eight weeks pregnant; and (2) the police were called when J.A. went to a neighbor's house at Caston's direction to call the police. When Beck arrived, Caston was still unconscious, and he called for medical personnel.

C. The Second Phase of the Adjudicatory Hearing
After accepting Caston's admission and stipulation, the trial court addressed Butler, *404 who remained present throughout the proceedings relating to Caston's admission and stipulation, and stated the following:
"THE COURT: Mr. Butler, you just heard Ms. Caston admit and stipulate to * * * this petition. Earlier you made a motion to continue this matter, do you recall?
[BUTLER]: Yes.
THE COURT: And at this time the court is going to reconsider, and I am going to continue [the case] so that you can consult with your lawyer as to how you wish to proceed.
If you wish to proceed with an evidentiary hearing as to you, then your lawyer will inform me. I'm going to give you [a] date and time, and I'm also going to set it for dispositional hearing as to Ms. Caston.
Do you understand what I'm doing?
[BUTLER]: Yes."
The trial court allotted the dispositional hearing for April 5, 2002, and directed DCFS to conduct an investigation and make a report for that hearing. The court then informed Butler that it was setting the adjudicatory hearing as to him for March 1, 2002.
On March 1, 2002, the court reconvened with all parties present, including Butler and his counsel, and the following discussion took place:
"THE COURT: * * * When we were in court on [February 26, 2002,] [Caston] admitted and stipulated to count I of the petition, and the court continued this so that [Butler] could have the advice of counsel as to how he wished to proceed.
* * *
[BUTLER'S COUNSEL]: We're ready, your Honor.
THE COURT: * * * Anything that you wish to tell the court in terms of Mr. Butler's wishes to proceed.
[BUTLER'S COUNSEL]: He would like a trial on this matter.
THE COURT: Then the court does call this for hearing on the petition, seeking a finding of neglect as to the respondent minor, [R.B.]"
The prosecutor then asked the trial court to take additional notice of Caston's stipulation at the February 26 hearing, as well as People's exhibit No. 1, the police reports, which were part of that stipulation, and Caston's verified petition for an order of protection. Butler's counsel objected, arguing that matters Caston stipulated to should not be considered by the court against Butler, nor should any sworn statement she made about the order of protection. Butler's counsel pointed out that because Caston did not pursue the matter, the order of protection case was dismissed.
The trial court overruled Butler's objections, explaining as follows:
"The allegation in this petition is not whether or not one person or the other caused the domestic violence; the question is was there any domestic violence and were the children exposed to it, and that is count [I] [on] which the State is proceeding * * *. It's important that Mr. Butler understand that, there was a stipulation, and the stipulation so far as the two police reports go, was not as to any legal conclusion as to whether what the officers were saying was the truth or not, the stipulation offered was that the officers, if called to testify, would testify consistent with the contents of the report.
The contents of the report describing what they report as to an episode of domestic violence, the court took note of those police reports as a factual basis for *405 accepting [Caston's] stipulation to the petition.
Two separate questions.
The court today takes note of [Caston's] stipulation to the petition acknowledging that there was an episode of domestic violence. Please note again for [Butler's] benefit, not assigning who was responsible for what in that episode, that stipulation acknowledges that there was an episode of domestic violence to which the children were exposed.
* * * The court takes note of her * * * sworn statement as to the petition for the order of protection. [Butler's counsel] raises the question of being able to examine those witnesses as it pertains to her client. And that is the nut of it and [Butler's counsel] is correct in that sense, and the court will give her leave and in fact the court will, if necessary, continue this if [Butler's counsel] wishes to call witnesses.
I think I am compelled to perhaps simplify all that verbiage. [Butler's counsel], what I've said in brief is that I take note of [Caston's] stipulation. I take note of the factual basis on which she rested, tendered it for her purposes as it pertained to [her].
* * *
As to [Butler,] what is relevant is [Caston's] stipulation that yes, there was an incident of domestic violence, as would have been testified to by the police officers if they were called to testify."
The State then rested, relying on Caston's admission and stipulation and accompanying factual basis, and Butler offered no evidence. The State argued that (1) it had the burden to prove that R.B. was a neglected child because her environment was injurious to her welfare in that she had been exposed to the risk of domestic violence when living with her parents, Caston and Butler; and (2) Caston's admission and stipulation, coupled with its factual basis, was sufficient to prove that R.B. was a neglected child. Butler's counsel argued that the evidence was not sufficient to prove his client "guilty" of child neglect. During her argument on Butler's behalf, his counsel twice referred to the evidence being insufficient "to find him guilty."

D. The Trial Court's Decision
The trial court initially responded to Butler's counsel by explaining that in this proceeding, "it is not a question of guilt, this is not a criminal trial, this is a civil proceeding, and the essence of the proceeding is whether or not [R.B.] is a neglected minor." The court further pointed out that the allegation of child neglect did not require proof that the domestic violence was against R.B., nor did the allegation specify who committed the domestic violence. Thus, the court explained, the State was not required to specify or prove who was responsible for the domestic violence, as would be required in a criminal case, but simply to establish whether or not the environment is one in which domestic violence places R.B. at risk. The court further explained as follows:
"In this matter[,] the court previously accepted [Caston's] stipulation that yes, there was domestic violence in the environment when [R.B.] was residing with her and/or with Gaston Butler. As a factual basis for accepting [Caston's] stipulation, the court accepted the stipulation to the police reports, and also took judicial notice of sworn statements entered in another proceeding."
The trial court concluded its remarks by noting that it could rely on Caston's admission and stipulation, which was sufficient for the State to sustain its burden of proof *406 that R.B. was a neglected minor by reason of being a minor under 18 years of age whose environment is injurious when she resides with Caston "and/or Butler" because she is exposed in that environment to the risk of domestic violence.
In May 2002, the trial court conducted a dispositional hearing, formally adjudicated R.B. a ward of the court, and appointed DCFS as her guardian. The court also ordered her removed from the custody of both Caston and Butler.
This appeal followed.

II. ANALYSIS
Butler argues that the trial court (1) improperly accepted Caston's stipulation as evidence against him; (2) violated his fourteenth amendment and statutory rights to fundamentally fair proceedings; and (3) made a decision that was contrary to the manifest weight of the evidence because, absent Caston's stipulation, the record contained no evidence against him. In support, he cites (1) section 2-18(6)(b) of the Act (705 ILCS 405/2-18(6)(b) (West 2000)), which prohibits a court from taking judicial notice if doing so would result in admitting hearsay evidence at a hearing where it would otherwise be prohibited; (2) People v. Long, 316 Ill.App.3d 919, 928, 250 Ill.Dec. 252, 738 N.E.2d 216, 222 (2000), which holds that police reports are generally inadmissible hearsay; and (3) section 1-5(1) of the Act, which provides that a respondent has a right to be present at all judicial court proceedings and to cross-examine any witnesses (705 ILCS 405/1-5(1) (West 2000)). Although Butler purports to raise three issues on appeal, in essence he raises just one: the procedural inappropriateness of the adjudicatory hearing the trial court conducted as to him. That inappropriateness allegedly occurred when the court considered Caston's stipulation as evidence, thereby violating Butler's statutory and constitutional rights.
In response, the State asserts the following:
"The sole admission of a custodial parent, [(Caston) ], as to the allegation of the neglect petition was sufficient to sustain the finding of neglect. Therefore, whether the court considered hearsay evidence at the respondent father's adjudicatory hearing is irrelevant; reversal is not required. The trial court's finding of neglect was based upon the stipulation of facts entered into by the minor's mother, a custodial parent. Her stipulation alone is sufficient to support the finding of neglect by the court and its adjudication of wardship. Furthermore, the issue at the adjudicatory hearing was whether [R.B.] was neglected and not the fitness of her parents to care for her. 705 ILCS 405/2-18(1) (West 2000)."
We agree with the State.
To address Butler's argument, we must analyze the purpose of the adjudicatory hearing and the issue it is intended to resolve.

A. The Purpose of the Adjudicatory Hearing
Initially, we agree with the trial court that Butler's argumentthat the evidence was not sufficient "to prove him guilty" of child neglectdoes not apply to juvenile court proceedings in which the issue is whether the respondent minor was neglected. Instead, Butler's argument would apply if he were standing trial on a criminal charge that he had injured R.B. In that situation, the State would have to prove beyond a reasonable doubt Butler's criminal culpability. At the adjudicatory hearing stage in the present case, his criminal culpability is no issue at all.
*407 Section 1-2(1) of the Act declares that the Act's purpose "is to secure for each minor subject hereto such care and guidance * * * as will serve the safety and moral, emotional, mental, and physical welfare of the minor." 705 ILCS 405/1-2(1) (West 2000). To achieve this purpose, the Act empowers juvenile courts to intervene on behalf of a child when that child's condition warrants intervention, not when the conduct or "guilt" of a parent or guardian warrants it. Accordingly, section 2-1 of the Act, entitled "Jurisdictional facts," states that "[p]roceedings may be instituted under the provisions of the [the Act] concerning boys and girls who are abused, neglected[,] or dependent, as defined in [s]ection[] 2-3 or 2-4 [of the Act]." 705 ILCS 405/2-1 (West 2000). Section 2-1 contains no mention of conduct or "guilt" of a parent or guardian.
Thus, the purpose of juvenile court proceedings is to determine the status of the child on whose behalf the proceedings are brought, not to determine any particular person's criminal or civil liability. Specifically, at an adjudicatory hearing involving an allegation of neglect or abuse, the issue before the trial court is whether the particular child is neglected or abused as alleged in the State's petition and as defined in section 2-3 of the Act. 705 ILCS 405/2-3 (West 2000).
Section 2-3 of the Act defines neglected children as those who live under certain conditions, such as, in the present case, a minor under 18 years of age "whose environment is injurious to his or her welfare" (705 ILCS 405/2-3(1)(b) (West 2000)), or, in another case, a minor "who is not receiving the proper or necessary support" (705 ILCS 405/2-3(1)(a) (West 2000)). These definitions do not address the question of who may be responsible for such adverse conditions because, in the first instance, that question does not matter. What matters initially is only whether the child is neglected because these conditions exist. After all, the Act's mandate is to protect children, not to assign blame to parents. If the State proves the neglect allegation, then causationand remediationcan and should be addressed by the trial court at the dispositional hearing.
The reason that causation is irrelevant at the adjudicatory hearing, where the trial court determines whether a child is neglected, becomes clear when the following hypothetical scenarios are considered. First is the case in which the State has alleged that a child was neglected because he was not receiving proper medical care. 705 ILCS 405/2-3(1)(a) (West 2000). No court would recognize as a defense to that charge the State's inability to prove precisely which parent or guardian should have been providing the proper medical care but failed to do so. Assuming total uncertainty regarding where the blame may lie, the child would be no less neglected if he, in fact, were not receiving proper medical care.
Consider another case in which the State alleged that a three-year-old child was neglected because his environment was injurious to his welfare in that he was found on multiple occasions wandering about at night in a partially clothed condition. The child would be no less neglected if the State had difficulty proving precisely which parent or guardian was at fault for permitting the child to wander about in such a condition. Not only would the State not have to prove who was at fault, it would not be a relevant inquiry.
Last, consider the case in which the State alleges that a 1 1/2-year-old child is abused because she suffered physical injury, by other than accidental means, which caused impairment of her physical health. The State's petition alleges the child suffered multiple and deep bruises, as well as welts, over several months, indicative of *408 excessive corporal punishment. Assume further that because the State does not know who inflicted this punishment, its abuse petition merely alleges that it was inflicted "by a parent or immediate family member or any other person who is in the same family or household as the child." See 705 ILCS 405/2-3(2) (West 2000). Further, assume at the adjudicatory hearing that the State is able to prove, through medical testimony, the allegation that this 1 1/2-year-old child suffered multiple and deep bruises and welts over several months but is not able to prove who caused the child's injuries. Each parent and the other members of the household testify that they were not responsible for the child's injuries. Consistent with Butler's argument in this case, the respondent parents in this hypothetical could argue to the trial court at the adjudicatory hearing that they should not be found "guilty" of child abuse. Yet, on these facts, the State would have proved to a moral certainty that this child was an abused minor under section 2-3(2)(i) of the Act because (1) the child suffered the injuries as alleged and (2) someone who is a parent, immediate family member, or other member of the child's household is responsible for these injuries.
Surely, the legislature that drafted section 2-3 of the Actas well as the public would be outraged and view as bizarre a trial court's ruling at the conclusion of the adjudicatory hearing in this hypothetical case that the child involved was not an abused minor because the State had not proved who was responsible for the abuse. The fact that the State cannot prove causation makes the child no less abused and no less needful of court intervention to both protect her and assure that the abuse stop.

B. Application of Adjudicatory Hearing Analysis to the Present Case
At issue in this case was the State's claim that R.B. was a neglected minor as defined in section 2-3(1)(b) of the Act because her environment was injurious to her welfare. 705 ILCS 405/2-3(1)(b) (West 2000). Under the foregoing analysis, Caston's admission and stipulation properly addressed the only issue pending at the adjudicatory hearing stage of this juvenile court proceedingnamely, the status of R.B. The trial court appropriately ruled that Caston's admission and stipulation, with its accompanying factual basis, was admissible on this issue. In so ruling, the court did not admit Caston's admission and stipulation as "evidence against Butler," as Butler contends. Instead, the court ruled that the admission and stipulation of Caston, the custodial parent, coupled with the underlying factual basis, was sufficient to prove R.B.'s statusnamely, that R.B. was a neglected minor as the State allegedgiven the absence of any persuasive evidence to the contrary. The court properly considered the factual basis in determining the weight to be given to Caston's admission and stipulation.
A custodial parent's admission and stipulation, by itself, may be sufficient to support a finding of abuse or neglect. However, a trial court must consider the factual basis therefor because a situation could arise in which neither the custodial parent nor any other credible person has personal knowledge of the circumstances alleged in the State's petition, thereby rendering that parent's admission and stipulation less persuasive than the admission and stipulation of Caston, who was present and an active participant in the incident alleged in the State's petition.
Although it is true that Butler possessed various procedural rights, such as the right to be present during the proceedings, to present evidence, and to cross-examine witnesses, these procedural rights did not *409 change the nature of the proceedings from one concerned about the status of R.B. to one in which Butler was an accused party and the State bore the burden of proving him responsible for R.B.'s neglect.
We also note that Butler never offered any evidence challenging the information regarding the domestic violence that was before the court through Caston's admission and stipulation and was the basis of the State's neglect petition. Butler was given the opportunity to attack the reliability of Caston's admission and stipulation and its factual basis by either testifying himself or calling Caston or the police officers to testify, but he failed to do so. And, if Butler had requested, the trial court might have permitted him to cross-examine all of these witnesses anew as if the State had called them as its witnesses. Butler's position appears to be that he was deprived of his procedural right to cross-examine the police officers (who were present in court when Caston made her admission and stipulation), but he provides no suggestion as to how that cross-examination might have impeached the officers' reports about the serious domestic violence that occurred in the presence of R.B. and J.A. in their home on the date in question.
Assuming arguendo that such cross-examination might have demonstrated that (1) Butler's behavior was not as bad as it appeared in the officers' reports and (2) Caston seriously provoked him in some way so as to mitigate (at least in Butler's eyes) his violent acts, neither of those points would be relevant to the question before the court: whether R.B. was a neglected minor for the reasons set forth in the State's petition. Accordingly, we conclude that the trial court's error, if any, in proceeding as it did and not again requiring the police officers to appear to be cross-examined by Butler, was a mere procedural error that did not prejudice Butler because no change in the ultimate outcome would have occurred.
The trial court found that the State had proved by a preponderance of the evidence that R.B. was a neglected minor. We conclude that its decision was not contrary to the manifest weight of the evidence. See In re A.P., 179 Ill.2d 184, 204, 227 Ill.Dec. 949, 688 N.E.2d 642, 652 (1997) ("The circuit court's finding on whether abuse or neglect occurred will not be disturbed on appeal unless contrary to the manifest weight of the evidence").
Our holding in this case is hardly unique. In In re Johnson, 102 Ill.App.3d 1005, 1014, 58 Ill.Dec. 31, 429 N.E.2d 1364, 1372 (1981), the court wrote the following: "The sole admission of the custodial parent as to the allegations of the neglect petition may be sufficient to sustain a finding of neglect by the trial court." In Johnson, the court concluded that the trial court's error at the adjudicatory hearingof appointing for the respondent father an attorney who had a conflict of interestdid not require reversal of the trial court's adjudication that the child was a neglected minor. The court held that the respondent mother had stipulated to the charge of neglect and "[h]er stipulation alone is sufficient to support the finding of neglect by the court and its adjudication of wardship." Johnson, 102 Ill.App.3d at 1014, 58 Ill.Dec. 31, 429 N.E.2d at 1372.
More recently, in In re April C., 326 Ill.App.3d 225, 242-43, 260 Ill.Dec. 6, 760 N.E.2d 85, 99 (2001), the First District addressed the situation in which one of the respondent parents in a case in which three children were alleged to be abused (705 ILCS 405/2-3(2) (West 2000)) argued on appeal that the trial court erred by accepting her admission and stipulation to the State's abuse allegations. The appellate court rejected that argument on various grounds, one of which was to note that *410 the respondent father entered into the same stipulation of facts, and his "stipulation alone would have provided a sufficient factual basis for the trial court to make its findings of abuse." April C., 326 Ill. App.3d at 242, 260 Ill.Dec. 6, 760 N.E.2d at 99. In so concluding, the court cited Johnson for the proposition that a respondent parent's stipulation of facts can provide a sufficient basis by itself for a trial court's finding of neglect. April C., 326 Ill.App.3d at 242-43, 260 Ill.Dec. 6, 760 N.E.2d at 99.

III. CONCLUSION
For the reasons stated, we affirm the trial court's judgment.
Affirmed.
KNECHT and McCULLOUGH, JJ., concur.