JUSTICE O’MALLEY, concurring in part and dissenting in part: I agree with the majority on two points. First, as the majority has emphasized, it “cannot fathom the thought process” (K.S., 343 Ill. App. 3d at 187) that the supreme court adopted in Arthur H. subsequent to our first decision in this case. We have been ordered to reconsider this case in light of precisely that “unfathomable” thought process. For the reasons that follow, I agree with the majority’s assessment of its abilities. The second thing that the majority and I agree upon is that the child sex abuse allegations against respondent remain unresolved. The majority’s point is that the allegations remain unresolved because the State withdrew the charge at the neglect phase. The question, then, is what to do about these unresolved sex abuse allegations. As explained below, the majority is strongly of the view that the State was obligated to pursue the sex abuse charge at the neglect phase, and the majority’s original position was that the consequence of the State’s failure to pursue the sex abuse charges at the neglect phase required an order from this court awarding custody of K.S. to the alleged child sex abuser. The majority did so order. For unexplained reasons, the majority has backed down from that original position.[1] The current majority opinion does not award custody to respondent, but instead remands this cause to the trial court with directions that the trial court not conduct further investigation into “uncharged allegations,” i.e., the child sex abuse allegations. It does so because it believes that “[t]he State had the opportunity to prove these allegations” (365 Ill. App. 3d at 575) but instead “foreclosed this possibility when it dismissed the criminal charge and withdrew the abuse allegations against” respondent (365 Ill. App. 3d at 574). For reasons that I detail below, the majority is wrong. But assume for the moment that the majority is correct that the State was wrong to assume that it could withdraw the child sex abuse allegations at the neglect phase but those allegations would still be dealt with at the dispositional phase. Such an error by the State would be a procedural default. I am unable to fathom any system of laws that expressly recognizes that the best interest of the child is paramount yet would permit a child to be condemned to the custody of an alleged child sex abuser (before resolution of such allegations) as a consequence of a procedural default by the State. I am aware that procedural defaults can lead to severe consequences, but nothing like this. Not only would such a result be contrary to common sense and common decency, but if the phrase “the best interest of the child is paramount” means anything, it certainly means that it is paramount to a procedural default by the State. So, even under the majority’s view of the law, the result it reaches (the trial court cannot investigate the child sex abuse allegations because they have been already withdrawn) is wrong. I disagree with the majority’s conclusion that the trial court improperly ordered a sex offender investigation, evaluation, or assessment[2] of respondent. In my view, at the dispositional phase the trial court needed to make a finding on respondent’s fitness before it awarded guardianship to DCFS and placed K.S. in the custody of her grandmother. I would remand to the trial court with the direction to address respondent’s fitness. In doing so, as explained more fully below, I would direct the trial court to make full use of section 2 — 21(2) of the Act, and to consider respondent’s cooperation (or lack thereof) in any investigation ordered pursuant to section 2 — 21(2). “Let there be no mistake” (365 Ill. App. 3d at 578), the majority has placed the trial court and K.S. in a “dilemma” (365 Ill. App. 3d at 574) by holding that the trial court was wrong to order a sex offender evaluation. The dilemma the majority has placed the trial court in comes about because the majority has barred the evaluation process without stating what an evaluation is. As I said in my dissent last time, all we know about the evaluation is what the trial court said about it: “All the more reason to follow through with this evaluation and see what they say. They will be reviewing the reports. They will be reviewing the statement to see if there was a recantation, whatever the situation is.” Obviously, the trial court has to determine the validity of the sex abuse allegations. I do not know what the trial court is supposed to do on remand, because the majority does not say specifically what the trial court is prohibited from doing. As the above quote from the trial court indicates, “they” (presumably investigators) are going to review reports and reinterview witnesses to try to uncover what happened here. Can the trial court do that under the majority’s ruling? Because the majority bans an evaluation without defining what that term entails, can the trial court do all that it described if it just uses a different label for what it is ordering? The majority surely cannot be directing the trial court not to have someone find out “whatever the situation is,” but, on the other hand, the majority has stated that the evaluation cannot be based on “uncharged” allegations. The majority laments (365 Ill. App. 3d at 571), again (365 Ill. App. 3d at 571-72), and again (365 Ill. App. 3d at 574), and again (365 Ill. App. 3d at 575), and again (365 Ill. App. 3d at 576-77), and again (365 Ill. App. 3d at 577-78) the lack of charges against respondent. Thus, the majority’s fundamental position is that the possibility of a hearing regarding the sex abuse allegations was foreclosed when the State dismissed the criminal charge and withdrew the sex abuse allegations against respondent (see 365 Ill. App. 3d at 574), and, thus, if an evaluation and dispositional hearing were to go forward, respondent would be left with no way to contest any unfavorable findings “against him.” This is flat-out wrong, both legally and factually, and it contradicts the basic point of Arthur H. that the majority is, in its own words, unable to fathom. The majority’s reliance on repetition rather than reasoned analysis is evidenced by its repeated observations regarding the withdrawal of certain charges and by the fact that the majority never responds to my discussion of how it fails to follow Arthur H. The majority is seeing the neglect stage as setting limits on what will be considered during the dispositional stage, meaning that if an allegation was not proved as to respondent at the neglect stage, then it cannot form the basis for the trial court’s orders at the dispositional stage. The majority states that “[t]he State foreclosed [the possibility of a hearing on the allegations] when it dismissed the criminal charge and withdrew the abuse allegations” (365 Ill. App. 3d at 574), and the majority concludes from that that the substance of the withdrawn allegations cannot form a basis for determining whether respondent is fit to have custody. But Arthur H. and In re C.N., 196 Ill. 2d 181 (2001), make it clear that the fact that the charges against respondent were withdrawn or never brought at the time of the trial court’s ruling at the neglect phase is of no consequence at the dispositional stage. The majority sees a need for a formal charging document as a basis for any orders or investigations at the dispositional stage, such as would be the case in a criminal proceeding. Though the majority complains of a lack of formal charges against respondent, it does not point to any statutory provision or case law indicating that the Act requires anything analogous to a criminal complaint making a formal charge against a respondent at the dispositional stage. Unlike charges in a criminal case, or the complaint in a typical civil case, the charges at the neglect stage do not shape everything that follows. In fact, the purpose of the neglect phase is quite different from that of the dispositional stage. After a child is found to be neglected, the proceeding moves to the dispositional stage, where the trial court is to determine what course of action is in the child’s best interests (Arthur H., 212 Ill. 2d at 464), but not to determine the guilt or innocence of a respondent (In re R.B., 336 Ill. App. 3d 606, 614 (2003)). This determination of the child’s best interests does not depend on any formal charges in the neglect petition. Quite specifically to the contrary, our supreme court has held that even if an issue was not alleged in the neglect petition, it can still be a basis for a service plan or dispositional order. C.N., 196 Ill. 2d at 214. The supreme court stated that “the relevant issues are not ‘frozen’ at the moment custody of the child is taken.” C.N., 196 Ill. 2d at 213-14. Rather, the necessity of considering other conditions that “come to light only with further investigation” is reflected in the “broad scope” of the investigation that the trial court is authorized to order under section 2 — 21(2) of the Act (705 ILCS 405/2 — 21(2) (West 2000)), after an adjudication of neglect.[3] C.N., 196 Ill. 2d at 214. Thus, “it makes no sense to so narrowly limit what the trial court can order a respondent parent to do following an adjudication of neglect, abuse, or dependency.” In re C.S., 294 Ill. App. 3d 780, 789 (1998); see also Chyna B., 331 Ill. App. 3d at 597-98 (“the conditions of a dispositional order need not relate solely to the grounds for adjudication of wardship”). C.N. gives no indication that any of the matters investigated during the dispositional phase need a basis in the form of a formal charging document. In fact, the law is quite the opposite — it gives the trial court the power to order an investigation of “broad scope” into “ ‘any *** information that may be helpful to the court’ ” at the dispositional phase. C.N., 196 Ill. 2d at 214, quoting 705 ILCS 405/2— 21(2) (West 1998). Adding a requirement, as the majority does, that any investigation at the dispositional stage must be tied to a formal charging document is utterly inconsistent with the Act and with supreme court precedent and would render meaningless the power to order an investigation of broad scope into any information that may be helpful to the court. However, the majority relies on exactly such a requirement in reaching its view that respondent is being deprived of his “right to custody” here (365 Ill. App. 3d at 577), because the trial court ordered an investigation into an “uncharged” allegation (365 Ill. App. 3d at 574). Such a view is flatly at odds with the holding of Arthur H. Notably, the majority does not even respond to any of this, let alone offer any reasoned analysis. It simply repeats over and over that certain charges were withdrawn or dismissed. As the trial court wisely and aptly observed: “The issue is not whether the criminal case was dismissed or not. I have no idea why it was dismissed. *** I don’t even know if it was the same complaining witness. But the issue now is that one of the children says that [respondent] sexually molested her. That may not be true. All the more reason to follow through with this evaluation and see what they say. They will be reviewing the reports. They will be reviewing the statement to see if there was a recantation, whatever the situation is. I don’t know from what I can see here.” So, “charges or no charges,” the question confronting the trial court was what to do with regard to the unresolved child sex abuse allegations. The trial court decided, again wisely in my view, to take the steps necessary to resolve those allegations before deciding whether the alleged child sex abuser should have custody of K.S. As noted, the trial court had the discretionary power to order an investigation into the alleged sex abuse, under the “broad scope” (C.N., 196 Ill. 2d at 214) of its investigatory powers under section 2 — 21(2) of the Act (705 ILCS 405/2 — 21(2) (West 2000)). Given that there was evidence presented, hearsay or otherwise, that respondent committed a sex offense, it was not an abuse of discretion for the trial court to order further investigation before placing custody of K.S. with respondent. The majority misses the point when it states that “[t]he absence of evidence is not ‘[a]ll the more reason’ to order a parent to submit to a sexual offender evaluation and possible counseling.” 365 Ill. App. 3d at 573. (Although the majority refers to sex abuse counseling in its opinion (365 Ill. App. 3d at 573), the trial court at no time ordered sex abuse counseling.) Of course, it is paradoxical to require the trial court to have proof of sex abuse before it can order an investigation of sex abuse. Obviously, it makes no sense to make proof a prerequisite to ordering an investigation, the purpose of which is to determine whether there is proof. The majority cites In re Baby Boy Butt, 76 Ill. App. 3d 587 (1979), for the premise that an order based on possible sex abuse is error. 365 Ill. App. 3d at 575. Butt, however, dealt with the proof necessary to place a child in the guardianship of DCFS, not the amount of evidence necessary to order an investigation under section 2 — 21(2). Butt, 76 Ill. App. 3d at 594. There is a wide chasm between these two issues, and Butt is inapplicable. The hearsay evidence that one of K.S.’s siblings and K.S.’s cousin accused respondent of sexually molesting them was enough to justify an investigation under section 2 — 21(2). The real question is whether the sex offender evaluation fits within the “broad scope” (C.N., 196 Ill. 2d at 214) of the investigatory powers granted to the trial court under section 2 — 21(2). The majority cites Lyon as authority for its conclusion that the trial court had no basis to order a sex offender evaluation, but Lyon is inapposite to the case at hand. In Lyon, the plaintiff, an accused sex offender, sought to have his name expunged from a sex offender registry. Lyon, 209 Ill. 2d at 268. The supreme court concluded that the plaintiff had a liberty interest in not being named on the registry (Lyon, 209 Ill. 2d at 273-74), and it held that the credible evidence standard used to enter the plaintiffs name on the registry was too low a standard to protect his due process rights (Lyon, 209 Ill. 2d at 279-84). Obviously, the current case has nothing to do with any sex offender registry. The majority opines about the fact that “[rjespondent was never given a hearing” to contest the allegations and about its belief that the trial court “attempted to rely on the sexual offender evaluation to prove whether respondent was guilty.” 365 Ill. App. 3d at 574. Again, the question at the dispositional stage is not respondent’s guilt or innocence, but instead K.S.’s best interests. The majority’s extended discussion of “credible evidence” demonstrates that it continues to labor under its misapprehension that the State must allege and prove allegations in order to allow the trial court to conduct an investigation. The discussion also belies the majority’s assertion, upon which it bases its opinion, that there was a “complete lack of evidence against respondent” (365 Ill. App. 3d at 571). Notwithstanding the majority’s non sequitur recapitulation of the Lyon credible evidence discussion, the legislature has precisely detailed what is to happen in a case where allegations of child sex abuse have been made, there is credible evidence regarding the allegations, and the child has been found to be neglected or abused: “Once the court finds that it is a matter of immediate and urgent necessity for the protection of the minor that the minor be placed in a shelter care facility, the minor shall not be returned to the parent, custodian or guardian until the court finds that such placement is no longer necessary for the protection of the minor.” (Emphasis added.) 705 ILCS 405/2 — 10(2) (West 2000). As the logic underlying Arthur H. makes clear, an adjudication of neglect is specific not to each parent, but to each neglected minor. Accordingly, once the trial court adjudicated K.S. neglected, and once it found an immediate and urgent necessity to place her in shelter care based on that neglect, custody of K.S. could not be given to respondent until the trial court found that shelter care placement was no longer necessary for her protection. The trial court’s attempts to investigate the sexual abuse allegations against respondent are consistent with the above legislative mandate. The majority’s pronouncements regarding respondent’s right to custody and the State’s “burden” to “present evidence in the first instance” (365 Ill. App. 3d at 578), however, are completely inconsistent with this legislative mandate and instead reflect the majority’s misapprehension regarding the need for “charges” against respondent. The majority responds to the requirement that K.S. not be placed with respondent until the trial court finds that doing so is safe, by wondering “how the trial court could ever make such a finding *** if the State never attempts to prove the *** allegations.” 365 Ill. App. 3d at 578. Thus, the majority believes that the State’s dropping both the criminal charge against respondent and the neglect count based on the same event,[4] combined with the trial court’s obeying the Act in trying to investigate the allegations against respondent, place respondent in a “readily see[n]” “dilemma” wherein “respondent must take responsibility for actions that he denies ever occurred and no one will take the responsibility of proving.” 365 Ill. App. 3d at 574. On the contrary, what is readily seen is that, as the majority proclaimed in its original opinion in this case, it remains unable to fathom the process that the supreme court and the legislature have set forth for these matters. Specifically, the majority does not understand the relationship between the adjudication of neglect and the proceedings that follow it. Again, the State need not have pursued any charges related to the sex abuse allegations in order for them to be relevant at the dispositional hearing. The purpose of the dispositional hearing is not to determine respondent’s guilt, but to ensure KS.’s safe placement. The trial court is duty-bound to investigate the charges against respondent, whether he denies them or not, and whether the State prosecutes them or not. Even if the State sought to abandon the sex abuse allegations, under section 2 — 21(2) of the Act, the trial court has the “broad” (C.N., 196 Ill. 2d at 214) authority to order an investigation into “any *** information that may be helpful to the court.” 705 ILCS 405/2 — 21(2) (West 2000). It must employ its authority to investigate, because a child removed to shelter care can be returned to his or her parents only after “the court finds that such placement is no longer necessary for the protection of the minor” (705 ILCS 405/2 — 10(2) (West 2002)). The only “dilemma” here is the one the majority places the trial court and K.S. in by preempting an evaluation without even knowing what the evaluation would entail. Moreover, the foregoing answers the majority’s question of how the trial court could make a finding pursuant to section 2 — 21(2) that it is safe (or not) to place custody with respondent. But the majority’s rhetoric highlights the shortcomings of its reasoning. The majority does not dispute that section 2 — 21(2) requires a specific finding that “placement is no longer necessary for the safety of the minor.” I find it extraordinary that the majority sees fit to disregard such a specific statutory mandate, not by a reasoned analysis of the statute’s constitutionality, but instead by claiming that respondent has been placed in a “dilemma.” Once again, the majority uses rhetoric and hyperbole rather than thoughtful analysis. But it is not any court’s prerogative to express disdain for a statute by using phrases such as “dilemma” and then simply refuse to follow it. Claiming that respondent has been placed in a “dilemma” is hardly a substitute for an analysis of a statute’s constitutionality. On the point of the evaluation itself, the majority states that “[cjompletion of the evaluation would not establish whether respondent sexually molested T.V.” 365 Ill. App. 3d at 574. I do not understand how the majority is so sure what the evaluation would or would not establish. Again, the majority never states what it envisions the evaluation would entail — it simply holds that an evaluation cannot be done. When the majority bars the trial court from conducting an evaluation, it essentially tells the trial court not to find out what has happened in this case and not to find out if there are credible recantations. The barrier to the determination of the truth of the allegations against respondent, then, is not the State or the trial court, but the majority. The majority’s assertions regarding respondent’s rights, and its dramatic averment that allowing an evaluation would cause “all other constitutional rights [to] be subordinated” (365 Ill. App. 3d at 574), completely miss the mark. It is not unreasonable that respondent should be asked to participate in the investigation, given the unique nature of juvenile proceedings. Instead of discussing what it envisions the evaluation would entail and whether that evaluation fits within the “broad scope” of the trial court’s section 2 — 21(2) investigatory powers, the majority quotes the trial court’s explanation, chiding it by emphasizing each of the trial court’s acknowledgments of what it did not know. See 365 Ill. App. 3d at 573. These acknowledgments were hardly abdications; they were exactly the sorts of things the Act contemplates will be investigated pursuant to section 2 — 21(2). The trial court never said that it intended to automatically adopt the report generated by the evaluation process or that respondent would be prohibited from challenging it at the dispositional hearing. The majority’s charge that the trial court “attempted to rely on the sexual offender evaluation to prove whether respondent was guilty of the alleged sexual offenses” (365 Ill. App. 3d at 574) is unfounded and contradicted by the trial court’s pronouncements, wherein the trial court clearly indicated that it would not form a conclusion as to the veracity of the allegations until it heard all the relevant evidence at the dispositional hearing. The dispositional report and the sex offender evaluation were to assist the court at the dispositional hearing. It is offensive to accuse the trial court of abdicating its role when it orders proceedings authorized by the Act to assist it, just as it is inaccurate to imply that the trial court denied respondent any demand for a hearing (see 365 Ill. App. 3d at 574 (“respondent demanded a hearing on the merits *** but was denied that opportunity”)). The trial court attempted to conduct a hearing, but respondent chose to appeal the trial court’s order instead of comply with it. Regarding what I view as the basis for the trial court’s investigation into the sex abuse allegations against respondent, the majority characterizes the DCFS report and the allegations against respondent as “rank tertiary hearsay” (365 Ill. App. 3d at 571) and “old, minimally substantiated *** reports” (365 Ill. App. 3d at 574). The majority’s statements are perplexing. Use of hearsay evidence is specifically authorized by the Act. 705 ILCS 405/2 — 18(4) (c), 2 — 22(1) (West 2000). Whether or not the hearsay evidence was “tertiary” misses the point. Respondent does not question that the two children accused him of sex abuse but, rather, maintains that the children lied. Thus, the factual content of the Catholic Charities report, i.e., whether or not the two children said that respondent sexually abused them, was never at issue. The record shows that the DCFS report, on which the Catholic Charities report was based, was distributed to the parties. In this case, there was no functional difference between “tertiary” hearsay and simple hearsay, and the Act specifically authorizes consideration of hearsay without limitation on the basis of it being “tertiary.” 705 ILCS 405/2 — 18(4)(c), 2 — 22(1) (West 2000). The majority’s assertion that the use of hearsay evidence precludes respondent from challenging the truth of the charges against him (see 365 Ill. App. 3d at 574) is a monumental overstatement. It is true that use of hearsay evidence prevents respondent’s cross-examination of the witness. However, this handicap is compensated for by the fact that the hearsay evidence is accorded lesser weight. 705 ILCS 405/2— 18(4)(c) (West 2000). Although respondent did not avail himself of this opportunity,[5] the hearsay evidence did not prevent him from putting on a defense at the hearing and attempting to discredit both accuser and accusation. Importantly, the stipulated testimony and the hearsay evidence are not being used to force respondent to undergo sex offender treatment or, for that matter, as a basis for an unfitness finding under section 2 — 27. They are being used as a basis to find more information pursuant to section 2 — 21(2). In my view, this purpose is properly commensurate with the lower weight accorded to hearsay evidence. Once again the majority expresses its disdain for the law, but what is the majority holding? The majority does not state that it has found section 2 — 18(4) (c) unconstitutional. Once again, it is not any court’s prerogative to express displeasure with a legislative enactment and then disregard it without any other basis for doing so. The majority’s statement that the trial court “attempted to rely on the sexual offender evaluation to prove whether respondent was guilty” (365 Ill. App. 3d at 574) is but one of the many statements the majority recites that make it sound as if the proceedings below were outrageous. However, further examination reveals that all of the following statements are simply hyperbole: “A finding by a DCFS worker *** does not obviate the need for the State to produce evidence of alleged offenses and for a judge to find *** that an offense was committed.” 365 Ill. App. 3d at 572. Again, this is not a criminal case, and K.S. has already been adjudicated neglected. “[T]he court ordered the evaluation before the dispositional report was even created.” 365 Ill. App. 3d at 571. Of course it did. The purpose of the evaluation was to help the trial judge determine what dispositional order would be in K.S. ’s best interests. “[T]he complete lack of evidence against respondent leads us to conclude that the trial court’s actions were [improper].” 365 Ill. App. 3d at 571. The majority’s assertion of a “complete lack of evidence” is belied by its extended discussion regarding the “limited value” (365 Ill. App. 3d at 572) of the “credible evidence” against respondent. Evidence cannot be both weak and nonexistent. “We are unaware of any authority that has determined, pursuant to Frye, that such an evaluation may be so utilized.” 365 Ill. App. 3d at 574. The trial court did not say that the evaluation would be so utilized and no party has raised Frye or adduced evidence about the scientific standing of a sex offender evaluation. In fact, we do not even know what exactly the evaluation will entail. Thus, there is no basis for this statement. “[Rjespondent demanded a hearing on the merits and an opportunity to confront witnesses but was denied that opportunity” (365 Ill. App. 3d at 574), and “[i]f these [due process rights to confront witnesses] can be sacrificed in such an instance, all other constitutional rights must also be subordinated” (365 Ill. App. 3d at 574). At the adjudicatory hearing, respondent did not object to the presentation of witnesses, did not demand an opportunity to cross-examine any witnesses, and indicated no objections to the stipulated neglect finding. I propose to remand to the trial court so that the trial court can conduct a hearing to determine respondent’s fitness to care for K.S., and respondent will be allowed to fully participate in that hearing. “Here, given the total lack of established facts [before the court], there was no basis to warrant the order of a sexual offender evaluation. The State had the opportunity to prove these allegations ***, either in a criminal trial, in an adjudicatory hearing, or at the dispositional hearing in question. It did none of these things.” 365 Ill. App. 3d at 575. Again, no charges were necessary here, and the purpose of the dispositional hearing was to protect K.S. ’s best interests, not to prosecute respondent. “The court cannot presume these allegations to be proven without conducting a hearing ***.” 365 Ill. App. 3d at 575. Nothing like that happened. In fact, the court expressly stated it did not know whether the allegations were true and ordered an investigation to be done before the dispositional hearing. “[The trial court cannot] order respondent to prove that he is not a sexual offender ***” (emphasis in original) (365 Ill. App. 3d at 575) and “[t]he trial court placed on respondent the burden of proving that he was not a sex offender” (emphasis in original) (365 Ill. App. 3d at 578). It would have been as outrageous as it sounds if the trial court had done either of these things. It did neither. It is equally outrageous to falsely accuse the trial court of such conduct. “[T]he State never attempted] to prove the hearsay allegations of sexual abuse ***.” 365 Ill. App. 3d at 578. That was the precise purpose of the investigation the trial court ordered. “A parent cannot be left to guess what avenues to pursue in order to protect [his right to custody].” 365 Ill. App. 3d at 578. Notice has never been an issue in this case. The above misstatements, though, comprise only a portion of the majority’s histrionics. In my dissent from the majority’s original opinion, I pointed out that the decision was an “enthusiastic” (K.S., 343 Ill. App. 3d at 189 (O’Malley, J., dissenting)) repudiation of the best interests of the child standard. See, e.g., K.S., 343 Ill. App. 3d at 184 (“The Star Chamber, inter alia, placed a premium on compelling subjects of investigation to admit guilt from their own lips”). Once again, the majority repudiates K.S.’s best interests with great enthusiasm and panache. See 365 Ill. App. 3d at 573 (“noxious cloud of ‘credible evidence’ ”); 365 Ill. App. 3d at 573 (“the trial court abdicated its role as fact finder”); 365 Ill. App. 3d at 574 (“old, minimally substantiated, thirdhand reports”); 365 Ill. App. 3d at 574 (“[o]ne can readily see the dilemma into which respondent has been placed”); 365 Ill. App. 3d at 574 (“[t]he law cannot allow a trial court to order such an evaluation based only upon uncharged, unsubstantiated, and unproved allegations that have been misconstrued as evidence”); 365 Ill. App. 3d at 574 (“[i]f these rights can be sacrificed *** all other constitutional rights must also be subordinated”); 365 Ill. App. 3d at 578 (“[l]et there be no mistake”). Aside from the above-mentioned misapprehensions, misstatements, and histrionics, the majority, as noted above, relies also on repetition and emphasis rather than on reasoned analysis. For example, the majority repeats several times that the sex abuse charges against respondent were withdrawn or unproven, but it never responds to my observation that the neglect phase does not frame the issues to follow as would a charging instrument in a criminal case or a complaint in a civil case.[6] Instead of engaging in analysis regarding the function of the neglect phase, the majority simply repeats again and again, and again, that the sex abuse count was withdrawn at the neglect phase. I give above another example of the majority’s use of emphasis in the place of reasoning, where I quote the majority’s quoting the trial court and emphasizing every instance in which the trial judge used a phrase such as “I have no idea” or “I don’t know.” However, aside from using emphasis to try to take the trial court’s statements out of context, the majority offers no reasoned analysis to explain why the trial court was in error. The majority also quotes the State’s brief as saying that, “ ‘[a]rguably ***, the trial court assumed that the Respondent was a sex offender *** because without a related evaluation, it had no other course of action consistent with the best interests of K.S.’ ” (Emphasis in original.) 365 Ill. App. 3d at 573. The majority once again emphasizes part of a statement, but the context of the State’s statement leaves no doubt that the State was simply making the rather obvious point that, if the trial court orders a sex offender evaluation to protect K.S. and respondent refuses to comply, the trial court is left with no option to protect K.S. other than to disallow respondent custody. Actually, the trial court’s lack of recourse is grounded not on any assumption, but on the uncontroverted fact that respondent refused to comply with the trial court’s order, i.e., to participate in the evaluation. Just as with the child safety plan, respondent cannot unilaterally disregard the trial court’s orders without consequence. Of course, he can and did appeal this issue. The majority notes that “the noxious cloud of ‘credible evidence’ has now hovered over respondent for more than six years.” 365 Ill. App. 3d at 573. I agree that the passage of time in this case, and in any case involving child custody, is a matter of great concern, but, obviously, a huge percentage of the delay in this case is a result of the majority’s original mistake the first time the case was before us, requiring supreme court review. Now, on remand, the majority is getting it wrong again, thus requiring yet another review by the supreme court. Moreover, the majority’s statement regarding the fate of respondent is telling of its view of what our approach should be here. As I observed above, this is not a criminal proceeding against respondent, and, under the applicable law, what is tragic here is that, for the same six years, the fate of K.S. has hung in the balance while the system has failed to make a final determination of child custody. The current procedural posture of this case presents a significant issue. The trial court entered a dispositional order that gave guardianship of K.S. to DCFS and placed her in the custody of her maternal grandmother. Section 2 — 27, however, requires that before the trial court may take such action, it must make a determination that “the parents, guardian, or legal custodian of [the] minor adjudged a ward of the court are unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor or are unwilling to do so, and that the health, safety, and best interest of the minor will be jeopardized if the minor remains in the custody of his or her parents, guardian or custodian.” 705 ILCS 405/2 — 27(1) (West 2000). The trial court made no such finding. The matter should be remanded so that the trial court can conduct a hearing to determine respondent’s fitness and ability to care for K.S. The trial court should have available the reports generated as a result of any evaluations or investigations conducted pursuant to section 2 — 21(2). Obviously respondent may participate in such a hearing. Consequently, the majority is wrong when it defends its position by complaining that, otherwise, actions will be taken against respondent without a hearing and the opportunity to respond to the allegations. I say that the majority’s backing down from awarding custody to respondent is “unexplained” because the supreme court ordered us to reconsider this case in light of Arthur H., and neither that order nor Arthur H. reached the issue of the propriety of this court ordering custody to respondent. Not only does the majority fail to state what it views an evaluation to be, but it also refers (sometimes by quoting the attorneys and trial court) to the action the trial court attempted to undertake as an “evaluation” (365 Ill. App. 3d at 568), an “assessment” (365 Ill. App. 3d at 569), “counseling” (365 Ill. App. 3d at 569), and “treatment” (365 Ill. App. 3d at 577). The majority’s use of the words “counseling” and “treatment” are blatantly wrong, and even respondent has not claimed that he was ordered to undergo treatment or counseling. Section 2 — 21(2) of the Act provides: “To assist the court in [deciding whether it is in the best interests of the minor to be made a ward of the court] and other determinations at the dispositional hearing, the court may order that an investigation be conducted and a dispositional report be prepared concerning the minor’s physical and mental history and condition, family situation and background, economic status, education, occupation, history of delinquency or criminality, personal habits, and any other information that may be helpful to the court.” (Emphasis added.) 705 ILCS 405/2 — 21(2) (West 2000). I note that, obviously, once the State had obtained the stipulation as to neglect on one of the counts, it was completely unnecessary for it to pursue any of the other counts of neglect, because neglect is adjudicated as to each minor and not as to each parent. Thus, it stands to reason that the State, assuming that the trial court could explore any abuse allegations during the dispositional stage, dropped the remaining counts in its neglect petition once it obtained Valerie’s stipulation of neglect. As the State points out in its brief, respondent “did not object to the presentation of evidence [as it was presented in this case], did not demand an opportunity to cross-examine any witnesses, nor did he object when the trial judge indicated there would be no direct evidence presented because the adjudication of neglect was being stipulated to.” The closest the majority comes to addressing my observation is at the conclusion of its opinion, where it states that “[a] dispositional hearing on a neglect petition is a vital stage in the process.” 365 Ill. App. 3d at 578. However, the majority couches this proclamation within a paragraph that assumes that the negligence adjudication should serve as notice to the parent of the issues to be addressed in a dispositional hearing. Thus the majority simply perpetuates its error.