615 N.E.2d 1336 (1993)
246 Ill. App.3d 484
186 Ill.Dec. 279
In re D.B., a Minor, (The People of the State of Illinois, Petitioner-Appellee, Joey Lynn Bilyeu, a/k/a Joey Lynn Abu-Hashish, Respondent-Appellant).
No. 4-92-0723.
Appellate Court of Illinois, Fourth District.
June 29, 1993.
*1337 Gregory A. Scott, Scott & Scott, P.C., Springfield, for respondent-appellant.
Donald M. Cadagin, State's Atty., Springfield, Norbert J. Goetten, Director, State's Attorneys Appellate Prosecutor, Springfield, Robert J. Biderman, Deputy Director, Linda Susan McClain, Staff Atty., for petitioner-appellee.
William A. Pryor, Springfield, Guardian ad Litem.
Justice McCULLOUGH delivered the opinion of the court:
This is an appeal by respondent Joey Lynn Bilyeu, a/k/a Joey Lynn Abu-Hashish, from an order of the circuit court of Sangamon County terminating her parental rights to D.B., a minor. In this appeal, respondent mother raises three issues, to wit: (1) whether the trial court properly struck a portion of her answer to the petition to terminate parental rights and the defenses alleged therein; (2) whether respondent was prejudiced by the conflict of interest of her attorney who had previously served as the minor's guardian ad litem (GAL); and (3) whether respondent is entitled to a new hearing due to the ineffective assistance of counsel. We affirm.
On June 27, 1988, the State filed a petition to adjudicate D.B., born January 18, 1987, a neglected minor in that the minor's mother had failed to provide adequate supervision of the infant (count I) and his environment was injurious to his health (count II). On the same day, a shelter-care order was entered in which the minor's temporary custody and guardianship was placed in the Illinois Department of Children and Family Services (DCFS). Michael Vonnahamen was shown to be the minor's appointed GAL.
On September 22, 1988, after accepting the respondent mother's admission as to count I and dismissing count II on motion of the State, the trial court entered an order adjudicating D.B. a neglected minor *1338 and placing custody and guardianship in DCFS pending further proceedings. A dispositional order was entered on November 17, 1988, finding that the minor's parents, guardian, or legal custodian were unable or unwilling for some reason other than financial circumstances alone to care for, protect, train, or discipline the minor; appropriate services aimed at family preservation and reunification had been unavailable or unsuccessful in rectifying the conditions which led to the finding of inability of the parents, guardian, or legal custodian to care for the child; and the best interests of the minor and the public required that the minor be made a ward of the court and custody be taken from his parents, guardian, or legal custodian. Custody and guardianship was continued in DCFS. As a condition to visitation, respondent mother was ordered to cooperate with the agency, have an alcohol-drug assessment, complete parenting classes, sign releases, keep DCFS informed of her address, and have a psychological evaluation and cooperate with any recommended treatment. In all proceedings through November 17, 1988, Vonnahamen served as GAL for the minor.
The client-service plans filed by DCFS indicated that on June 14, 1989, respondent mother signed a surrender of her parental rights to D.B. On October 10, 1989, the putative father, Michael Long, signed a denial of paternity of D.B. On November 20, 1989, the case was "transferred to adoption." Since June 23, 1988, D.B. has been living in the home of his maternal grandparents to whom D.B. had bonded, and who showed a great deal of concern for D.B.'s well-being. On August 27, 1990, the State filed a supplemental petition seeking that (1) DCFS be appointed to represent the minor's rights, (2) DCFS continue to act as guardian of D.B. "without the power to consent to adoption," and (3) requesting a court review. Notice was sent to Vonnahamen as GAL. By order of the court dated September 20, 1990, DCFS was ordered to continue as D.B.'s guardian without power to consent to adoption.
On July 1, 1991, the State filed a petition to terminate parental rights. With regard to respondent mother, the petition alleged that she had irrevocably and permanently surrendered all her parental rights and given up custody of D.B. to DCFS. The complaint stated that there was attached to it a copy of the final and irrevocable surrender to an agency for purposes of adoption of a born child signed by respondent mother on June 14, 1989. Although the copy was not attached, respondent mother did not object to the attaching of the document at the first hearing on the petition. The executed surrender for adoption met the requirements of section 10 of the Adoption Act (Act) (Ill.Rev.Stat.1987, ch. 40, pars. 1512(C), (I), (J)), and it showed respondent to be 21 years of age at the time of its execution.
On July 18, 1991, respondent mother filed a motion for appointment of an attorney, which motion was denied on August 15, 1991. The order of August 15, 1991, however, indicated that William Pryor was acting as GAL for the minor. On August 16, 1991, Vonnahamen entered his appearance for respondent mother.
On September 11, 1991, respondent mother filed an answer to the petition for termination of parental rights admitting she signed the waiver of parental rights, but alleging that (1) she was told by the child's grandmother that she would be able to see the minor and, eventually, to get custody; (2) respondent mother was planning on leaving the State of Illinois at the time and wanted to make sure she could still see the minor and get custody; (3) subsequent to signing the document, the child's grandmother refused to allow respondent mother to see the child; (4) she did not know she could revoke her consent until she had contacted an attorney after receiving the petition to terminate parental rights; (5) if she had known she had the right to revoke the document, she would have done so shortly after signing it; and (6) she would not have signed the document "except for the fraudulent statements made to her by her mother, and for the duress of the minor child through adoption."
The State responded by filing a motion to strike the portions of the answer which raised the affirmative defenses. It was the *1339 State's position that the validity of an irrevocable surrender for adoption based upon a claim of fraud and duress could not be made more than 12 months after the signing of the document. (Ill.Rev.Stat.1987, ch. 40, par. 1513.) Citing Kathy O. v. Counseling & Family Services (1982), 107 Ill. App.3d 920, 63 Ill.Dec. 764, 438 N.E.2d 695, the State further contended that the failure of the respondent mother to allege that the fraud and duress was committed by agents of DCFS defeated respondent mother's alleged affirmative defenses since fraud and duress by a person other than the person before whom the surrender for adoption was acknowledged did not affect the validity of the document. On October 29, 1991, the trial court entered an order striking all paragraphs of respondent mother's answer except the paragraph in which she admitted signing the surrender for adoption.
On April 9, 1992, the hearing was conducted at which respondent mother testified that she signed the surrender for adoption and that June 13, 1989, was "most likely" the date on which she signed it, although she could not remember. The surrender for adoption form was admitted as an exhibit. Also admitted into evidence without objection was a "Parental Affidavit" signed by respondent mother on June 14, 1989, indicating she had read and understood the surrender for adoption form, signed it of her own free will, understood her decision was final and she could never regain rights to her child, no one had threatened her or made promises to her to encourage the surrender of the child, and all of her questions were answered to her satisfaction. Another exhibit admitted into evidence without objection was the affidavit of Jacqueline I. Wert, the child-welfare specialist who took the surrender for adoption. Wert's affidavit stated that respondent signed the surrender for adoption of her own free will, did not appear to be under the influence of drugs or alcohol, and spoke the English language. The affidavit further stated that Wert explained to respondent her rights before respondent signed the surrender for adoption. According to the affidavit, Wert explained to respondent mother that she was signing the surrender for adoption form of her own free will, not being under duress or coercion and no one having promised or threatened her to sign the document, intending and desiring to release the child for adoption, and understanding the surrender for adoption was final and irrevocable and she could not change her mind.
Respondent mother was represented by Vonnahamen at this hearing. Counsel did not cross-examine witnesses, and no evidence was presented on behalf of respondent mother. Counsel stated the only argument he had was that respondent mother signed the surrender for adoption form under duress, an argument which had already been rejected by the order on the motion to strike. A different judge presided over this hearing than the judge who granted the motion to strike. When this judge asked if he was bound by the prior ruling, Vonnahamen stated, "If the court feels that that isn't a final order, then we certainly would renew our argument that * * * it was signed under duress and she would like to revoke it." The assistant State's Attorney disagreed, arguing that the answer before the court was simply the admission to the surrender for adoption. The trial court stated, "Well, if I'm bound by Judge Keith's ruling, it would appear to me that the Irrevocable Surrender to an Agency for Purposes of Adoption of a Born Child is in proper form."
On May 6, 1992, an order was entered finding respondent mother had permanently surrendered all her parental rights and had given up control of D.B. and that the surrender for adoption form was valid and in proper legal form. As a result, respondent mother's parental rights were ordered terminated, and DCFS was appointed legal guardian and custodian of D.B. with the power to consent to adoption.
On June 5, 1992, respondent mother, represented by new counsel, filed a motion for reconsideration. At the hearing on the motion for reconsideration conducted on July 23, 1992, respondent mother's new counsel argued a conflict of interest on the part of Vonnahamen and his ineffective assistance to respondent mother. The surrender for *1340 adoption was also attacked as being invalid because it was not signed in open court. It was suggested that there might be some type of estoppel argument about which respondent mother ought to be allowed to present evidence. At the hearing, respondent mother testified that Vonnahamen had told her he had represented her son, but he said there was no conflict of interest. That conversation took place near the beginning of Vonnahamen's representation of her. She testified, "He told me that in the beginning he represented my son and that there should be no conflict of interest now because we're not arguing neglect, we are arguing consent." She felt Vonnahamen inadequately represented her as a result of the conflict of interest "because I don't think he represented me like he would anybody else." Vonnahamen never gave her a form to sign by which she would waive any potential conflict of interest.
On July 28, 1992, the motion for reconsideration was denied. The trial court's order found that Street v. Hubert (1986), 141 Ill.App.3d 871, 96 Ill.Dec. 215, 491 N.E.2d 29, was controlling and, although the conflict allegation presented a problem, the court failed to see any prejudice.
At the time the respondent mother signed the surrender for adoption form, section 11 of the Act provided in relevant part as follows:
"[A] surrender of a child by a parent, including a minor, to an agency for the purpose of adoption shall be irrevocable unless it shall have been obtained by fraud or duress on the part of the person before whom such consent, surrender, or other document equivalent to a surrender is acknowledged pursuant to the provisions of Section 10 of this Act or on the part of the adopting parents or their agents and a court of competent jurisdiction shall so find. No action to void or revoke a consent to or surrender for adoption, including an action based on fraud or duress, may be commenced after 12 months from the date the consent or surrender was executed." Ill.Rev. Stat.1987, ch. 40, par. 1513.
We first address the statute and its 12-month limitations period, which is dispositive as to respondent's contentions of fraud or duress. Significant to the case at bar is the requirement that an action for fraud or duress to invalidate the surrender for adoption must be initiated within 12 months of the date the document was signed. Respondent mother attacks that part of the statute with two contentions. The first contention does not directly attack the statute, but challenges the State's reliance on Street as support for the proposition that the 12-month period should be construed to bar the defense raised here.
Although respondent acknowledges that section 11 of the Act reflects a legislatively recognized public policy which favors the finality and stability of adoptions (In re Nolan (1981), 94 Ill.App.3d 1081, 1085, 50 Ill.Dec. 442, 446, 419 N.E.2d 550, 554), she attempts to distinguish Street because Street involved an attempt to upset an adoption order almost six years after the order was entered, whereas in the case at bar no adoption order had yet been entered. There is a factual distinction between challenging the validity of the surrender for adoption and challenging a final order of adoption. (See In re Adoption of Baby Girls Mandell (1991), 213 Ill.App.3d 670, 674, 157 Ill.Dec. 290, 292-93, 572 N.E.2d 359, 361-62.) However, the statute in the case at bar is addressed to the subject of challenges to the validity of the surrender for adoption, without any reference to whether an order of adoption has been entered. The statute specifically bars a challenge to the validity of the surrender for adoption made later than 12 months after the date on which the document was signed. Also distinguishable is In re Adoption of Kindgren (1989), 184 Ill. App.3d 661, 666-67, 132 Ill.Dec. 745, 748-49, 540 N.E.2d 485, 488-89, which respondent cites, wherein a challenge to the validity of a consent to adoption was involved but no issue was raised concerning the timeliness of the challenge to the consent for adoption. It would appear that in Kindgren the challenge to the consent to adoption was timely raised. See Mandell, *1341 213 Ill.App.3d at 674, 157 Ill.Dec. at 293, 572 N.E.2d at 362.
Respondent mother contends that section 11 of the Act ought to be construed to incorporate the discovery rule.
"[T]he discovery rule * * * provides that the relevant statute of limitations begins to run when a person knows or reasonably should have known of his injury and also knows or reasonably should have known that it was wrongfully caused. (Knox College v. Celotex Corp. (1981), 88 Ill.2d 407, [58 Ill.Dec. 725], 430 N.E.2d 976.)" Santa Claus Industries, Inc. v. First National Bank (1991), 216 Ill. App.3d 231, 236, 159 Ill.Dec. 657, 660, 576 N.E.2d 326, 329.
"In interpreting a statute, the primary rule, to which all other rules are subordinate, is to ascertain and give effect to the true intent and meaning of the legislature." (Kraft, Inc. v. Edgar (1990), 138 Ill.2d 178, 189, 149 Ill.Dec. 286, 291, 561 N.E.2d 656, 661.) The primary source for determining the legislative intent is the language used in a statute. (Business & Professional People for the Public Interest v. Illinois Commerce Comm'n (1991), 146 Ill.2d 175, 207, 166 Ill.Dec. 10, 22, 585 N.E.2d 1032, 1044.) The language of a statute is to be given its plain and ordinary meaning. People v. Steppan (1985), 105 Ill.2d 310, 317, 85 Ill.Dec. 495, 498-99, 473 N.E.2d 1300, 1303-04.
In Street, the court rejected the applicability of the discovery rule to this type of case because its application would undermine the purpose of the statute of limitations contained in section 11 of the Act, which is to promote stable family relationships free from unnecessary intrusion by cutting off the prolonged ability of natural parents to set aside an adoption decree. (Street, 141 Ill.App.3d at 874, 96 Ill.Dec. at 217, 491 N.E.2d at 31.) As noted in Street, the legislature shortened the time period from five years to one year, and to apply the discovery rule would be inconsistent with the purpose of the amendment to the Act.
We agree that the discovery rule does not apply to the case at bar and that respondent mother could not raise an affirmative defense of fraud and duress more than 12 months after the signing of the surrender of adoption. The trial court properly granted the State's motion to strike those portions of respondent mother's answer.
The next question is whether respondent mother was prejudiced by a conflict of interest on the part of Vonnahamen. The question of whether a per se conflict of interest exists has been raised in civil cases (Harris v. Harris (1990), 196 Ill.App.3d 815, 826, 144 Ill.Dec. 113, 121, 555 N.E.2d 10, 18; Schlenz v. Castle (1985), 132 Ill. App.3d 993, 1000-01, 87 Ill.Dec. 571, 577-78, 477 N.E.2d 697, 703-04), although the issue most often arises in criminal cases. The per se conflict of interest rule provides that allegations and proof of prejudice are unnecessary if counsel, without the knowledgeable assent of the client, might be restrained from fully representing the client's interests because of a commitment to another. (People v. Enoch (1992), 146 Ill.2d 44, 52, 165 Ill.Dec. 719, 723, 585 N.E.2d 115, 119.) In order for a per se conflict of interest to exist, the attorney must have a contemporaneous relationship with the third party which prevents counsel from devoting an undivided loyalty to the complaining party. (People v. Flores (1989), 128 Ill.2d 66, 83, 131 Ill.Dec. 106, 111, 538 N.E.2d 481, 486.) Where a per se conflict of interest is not established, the complaining party has the burden of showing an actual conflict of interest and demonstrating prejudice. Flores, 128 Ill.2d at 84, 131 Ill.Dec. at 112, 538 N.E.2d at 487.
In the case at bar, Vonnahamen did not simultaneously represent the minor and respondent mother. At the time he represented respondent mother, the minor was not his client. Furthermore, respondent mother admitted Vonnahamen disclosed his prior representation of the minor and stated he did not believe there would be a conflict of interest. This discussion occurred at the time of or shortly after respondent mother retained Vonnahamen to represent her. Nevertheless, she continued to have Vonnahamen represent her and *1342 only raised the conflict of interest issue when she got an unsatisfactory result.
There is no per se conflict of interest in this case, and respondent mother has not demonstrated any prejudice. In light of this court's determination that the surrender for adoption was irrevocable and the challenge to the validity of the document based on allegations of fraud and duress was untimely, respondent mother was not prejudiced by any alleged conflict of interest on the part of Vonnahamen.
Respondent mother also contends she was denied the effective assistance of counsel. We reject this argument for two reasons. First, the presence of a valid, irrevocable surrender for adoption removes any possibility of prejudice to respondent mother. Second, the standards relating to the doctrine of ineffective assistance of counsel announced in Strickland v. Washington (1984), 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 698, are based on the right to counsel guaranteed to criminal defendants under the sixth amendment to the United States Constitution. (People v. Clark (1991), 207 Ill.App.3d 439, 449, 152 Ill.Dec. 455, 462, 565 N.E.2d 1373, 1380.) Since this is a civil matter, respondent mother is an adult and is not under any legal disability, and she retained counsel to represent her, we decline to extend the doctrine of ineffective assistance of counsel to this case.
For the foregoing reasons, the judgment of the circuit court of Sangamon County is affirmed.
Affirmed.
STEIGMANN, P.J., and GREEN, J., concur.