No. 2—10—0685
Opinion filed December 15, 2010

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* Darius G., | ) | Appeal from the Circuit Court of |
| | ) | Winnebago County. |
| a Minor | ) | |
| | ) | No. 07—JA—309 |
| | ) | |
| (The People of the State of Illinois, | ) | Honorable |
| Petitioner-Appellee, v. Tracie G., | ) | Patrick L. Heaslip, |
| Respondent-Appellant). | ) | Judge, Presiding. |

PRESIDING JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justice McLaren concurred in the judgment and opinion.
Justice Hutchinson dissented, with opinion.

**OPINION**

Respondent, Tracie G., appeals the trial court's June 30, 2010, order terminating her parental rights to minor Darius G.[1] Respondent argues on appeal that she received ineffective assistance of counsel and that the trial court's findings that she is unfit and that termination is in Darius's best interest are contrary to the manifest weight of the evidence.

For the following reasons, we agree with respondent's contention that she received ineffective assistance of counsel resulting from a *per se* conflict of interest when, during these proceedings, the same attorney from the public defender's office appeared on her behalf at one

_____

[1]The trial court also terminated the parental rights of Darius's father, but that decision is not before us in this appeal.

hearing but then subsequently appeared on Darius's behalf at another hearing. Accordingly, we reverse and remand.

## I. BACKGROUND

### A. Shelter Care and Permanency Review Hearings

On December 4, 2007, the State petitioned the trial court to find Darius a neglected minor under sections 2—3 and 2—4 of the Juvenile Court Act of 1987 (Juvenile Court Act). 705 ILCS 405/2—3(1)(a), 2—4(1)(a) (West 2006). That day, the court held a shelter-care hearing. Respondent was not present. The court appointed "Conflicts I" attorney Ryan Swift, from the "Conflicts Division of the Public Defender's office," to represent Darius. Swift informed the court that, based on the statement of facts presented to him by the State, he believed there existed probable cause to find neglect. The court found probable cause to find neglect and found that it was a matter of urgent and immediate necessity to place Darius in State custody with the Department of Children and Family Services (DCFS).

On December 12, 2007, respondent appeared for a shelter-care hearing, and the court appointed Robert Simmons of the public defender's office to represent her. Respondent provided the court with the identity of Darius's father, was advised by the court of the pending petition, and waived her right to the shelter-care hearing. Darius was placed in traditional foster care.

On March 20, 2008, respondent stipulated to the neglect petition. Darius was represented by Kristin Anderson (the reason for the change in attorneys is unclear from the record, but it appears that she, too, was a "conflicts" attorney), who agreed with the stipulation. The court accepted the stipulation, finding that a factual basis supported it. The court adjudicated Darius a neglected minor, and custody and guardianship remained with DCFS.

Thereafter, a series of permanency-review hearings were held to assess whether respondent was making reasonable progress toward the goal of returning Darius home to her care. At the first hearing, on September 8, 2008, respondent's former counsel, Simmons, appeared on behalf of Darius's father. Respondent's new counsel was Matthew Jura. Darius was represented by Kristin Anderson. Throughout the remaining permanency-review hearings, Darius was represented by Anderson while respondent was represented by Jura (March 10, 2009) and Erin Buhl (September 1 and October 20, 2009). (On September 29, 2009, Shannon Reeves-Rich requested on Buhl's behalf a continuance, which was granted.)

In sum, the evidence from these hearings reflected that respondent initially made reasonable progress but later attended only half of her scheduled visits with Darius (sometimes missing without explanation), was evicted from her apartment, was discharged from counseling for lack of attendance, and was unable to successfully complete a parenting class until the fourth time she enrolled. Ultimately, on October 20, 2009, the State argued that it had made reasonable efforts but that respondent had not. It requested that the goal be changed. On Darius's behalf, Anderson also requested that the goal be changed. The court agreed, finding that respondent did not make reasonable efforts toward Darius's return and changing the goal to substitute care pending a determination of parental rights.

## B. Termination of Parental Rights

On November 24, 2009, the State petitioned for termination of parental rights and power to consent to an adoption, arguing that termination was appropriate because, pursuant to the Adoption Act (750 ILCS 50/1 *et seq*. (West 2008)), respondent was an unfit person in that she: (1) failed to maintain a reasonable degree of interest, concern, or responsibility for Darius's welfare (750 ILCS

50/1(D)(b) (West 2008)); (2) failed to protect Darius from conditions within his environment that were injurious to his welfare (750 ILCS 50/1(D)(g) (West 2008)); and (3) failed to make reasonable progress toward Darius's return to her during "any 9-month period after the end of the initial 9-month period following the adjudication of neglect[] or abuse[]" (750 ILCS 50/1(D)(m)(iii) (West 2008)).

That same day, respondent appeared before the court for arraignment on the petition. Respondent was represented by Mike Herrmann. Anderson continued to represent Darius. The court informed respondent of the petition's allegations, the bifurcated nature of the proceedings (unfitness followed by best interest), the State's burden of proof, and respondent's right to counsel and to present evidence on her own behalf. Thereafter, the parties discussed locating Darius's father so that he could be served with the petition.

A brief hearing was held on December 18, 2009. At that hearing, respondent was again represented by Buhl, not Herrmann.

However, at the next substantive hearing, the pretrial conference held on February 19, 2010, Herrmann reappeared, although he no longer represented respondent. Instead, he appeared on Darius's behalf. No explanation was provided for why Herrmann replaced Anderson as Darius's attorney. Respondent was present and Buhl appeared on her behalf. As it was the father's first appearance, the trial court arraigned him on the petition to terminate parental rights. Afterwards, the trial date was scheduled. Nothing else of substance happened at this hearing.

On March 19, 2010, at a brief appearance before the court on a discovery status, respondent was again represented by Buhl and Darius was again represented by Anderson. Herrmann did not appear.

On May 27, 2010, trial commenced on the unfitness portion of the State's petition. Respondent was represented by Buhl; Darius was represented by Eric Arnquist. These attorneys represented their respective parties through the remainder of these proceedings (again on June 17, 2010, and, finally, on June 30, 2010). After presenting evidence, the State argued that it had proved respondent unfit as alleged in the petition. Arnquist agreed. On June 17, 2010, the court found that the State had established by clear and convincing evidence that respondent was unfit on the three grounds alleged in the State's petition.

Immediately thereafter, a hearing commenced on the best-interest portion of the State's petition. In sum, the State argued that it would be in Darius's best interest for respondent's parental rights to be terminated. Again, Arnquist agreed. On June 30, 2010, the court found that it was in Darius's best interest that respondent's parental rights be terminated. Respondent appeals.

## II. ANALYSIS

Respondent argues first that she was denied effective assistance of counsel because Herrmann represented both her and Darius at different times during the proceedings. In juvenile proceedings, ineffective-assistance-of-counsel claims are considered under the same standard as that applied in criminal proceedings; namely, that, to establish ineffective assistance, one must show both that counsel's representation fell below an objective standard of reasonableness *and* a reasonable probability that, but for the error, the result would have been different. *In re S.G.*, 347 Ill. App. 3d 476, 479 (2004). Here, however, respondent argues that she need not establish any prejudice to succeed on her ineffective-assistance claim because, when the same attorney represents opposing parties in the course of the same litigation, a *per se* conflict of interest arises and prejudice is presumed. Respondent argues that such representation is *per se* ineffective and that her right to

privileged and confidential communication with Herrmann was violated when, after representing her, he appeared on Darius's behalf.

The State disagrees that this situation presents a *per se* conflict of interest. The State notes that the case law enumerating *per se* conflicts of interest has been developed in the criminal-law context, where the adversarial nature of the proceedings has a fundamental impact on constitutional due process protections. Here, the State notes, proceedings under the Juvenile Court Act are not meant to be adversarial, a guardian *ad litem* does not represent the minor in a traditional attorney-client manner, and a respondent's right to counsel in termination proceedings derives from the Juvenile Court Act, not the constitution. Accordingly, the State argues that the *per se* conflict rule should be applied with restraint in the "unique three-party setting of a termination proceeding where the objective is not merely to secure a judgment that benefits one party at the expense of another, but, rather, to ascertain and order procedures to secure the best interests of the minor child."

Although respondent did not raise this issue before the trial court, forfeiture is a limitation on the parties, not the reviewing court. *In re D.F.*, 208 Ill. 2d 223, 239 (2003). Here, we relax the forfeiture rule to: address a plain error affecting the fundamental fairness of a proceeding (see *In re Jay. H.*, 395 Ill. App. 3d 1063, 1067 (2009)); maintain a uniform body of precedent (see *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 505 (2002)); and reach a just result (see *In re D.F.*, 208 Ill. 2d at 239).

We review *de novo* the question of whether counsel's representation constituted a *per se* conflict of interest. *People v. Miller*, 199 Ill. 2d 541, 544 (2002). As the State correctly notes, the *per se* conflict-of-interest inquiry originated in criminal law and is based upon a criminal defendant's sixth amendment right to effective assistance, *i.e.*, conflict-free representation. *People v. Hernandez*,

231 Ill. 2d 134, 142 (2008). A *per se* conflict arises when a defense attorney has ties to a person or entity that would benefit from an unfavorable verdict for the defendant, because the attorney's knowledge that his or her *other* client's favorable result would conflict with the defendant's interest "might 'subliminally' affect counsel's performance in ways [that are] difficult to detect and demonstrate." *Id.* at 142-43. In the criminal context, our supreme court has identified three *per se* conflicts requiring reversal: (1) defense counsel has a prior or contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution; (2) defense counsel contemporaneously represents a prosecution witness; or (3) defense counsel is a former prosecutor who had been personally involved in the defendant's prosecution. *Id.* The "threshold inquiry in any conflict-of-interest case is whether, in fact, defense counsel represented or represents a party with conflicting interests to those of the defendant." *People v. Graham*, 206 Ill. 2d 465, 472 (2003).

The State argues that none of the three circumstances identified above exists here, but it concedes that two appellate court opinions have applied the *per se* conflict analysis outside the criminal context and, specifically, in cases involving termination of parental rights: *In re D.B.*, 246 Ill. App. 3d 484, 492 (1993) (no *per se* conflict established), and *S.G.*, 347 Ill. App. 3d at 481 (*per se* conflict established). The State argues that both cases are wrongly reasoned because they fail to fully consider that the purpose of the *per se* conflict rule is to address adversarial situations where an attorney's commitment to others undermines his or her loyalty to the defendant's interest. The State urges that such a situation is not present here because of the nature of three-party termination proceedings and the fact that Herrmann represented Darius *after* representing respondent.

First, we note that, to the extent the State suggests that a parent's right to counsel in a termination case—a right derived from the Juvenile Court Act, not the constitution—does *not* require

the representation to be conflict-free, we disagree. Implicit in the right to effective assistance of counsel is the right to undivided loyalty from one's attorney. *In re Johnson*, 102 Ill. App. 3d 1005, 1011 (1981). In other words, regardless of the source of a client's right to representation—the constitution or the Juvenile Court Act—the right to effective representation includes the right to undivided loyalty from one's attorney; that one's counsel not undertake conflicting interests or inconsistent duties "is so central to our profession that it is embodied in our Rules of Professional Conduct." *S.G.*, 347 Ill. App. 3d at 479, citing Supreme Court Rule 1.9(a) (eff. Jan. 1, 2010). Moreover, it is clear that "the statutory right to counsel in juvenile proceedings is violated when one attorney is appointed to represent parties with conflicting interests." *Johnson*, 102 Ill. App. 3d at 1011-12.

Second, to address the State's argument that *S.G.* and *D.B.* should not apply here, we summarize their holdings. In *S.G.*, the trial court appointed an attorney (an assistant public defender) as guardian *ad litem* for the minors. The attorney represented the minors for a total of two months and appeared at one hearing where he cross-examined a State witness. After that hearing, with no reason for the change appearing in the record, the trial court vacated the attorney's appointment as guardian *ad litem* and instead appointed him to represent the mother. The attorney represented the mother for the next four years. Although the record did not reflect that the attorney represented the mother in anything but a "competent and dedicated manner with complete loyalty," the appellate court agreed with the mother that the fact that he had first represented her children in the same proceedings created a *per se* conflict. *S.G.*, 347 Ill. App. 3d at 481.

Specifically, the court noted that it was uncontested that the attorney represented parties with adverse objectives at different times in the same proceedings; the State did not disagree that the

mother's interest and the minors' interests were diametrically opposed (the mother sought to retain her custody and parental rights, while the State, DCFS, and the guardian *ad litem* advocated otherwise). *Id.* The court asserted that it could "think of no reason that a party in a proceeding brought pursuant to the [Juvenile Court] Act should not be afforded the same standard of legal representation as a criminal defendant." *Id.* The court rejected the argument that the record's evidence of the attorney's limited activity on the minors' behalf reflected that no *per se* conflict arose. "[T]he State's argument belies the underlying purpose of the *per se* conflict-of-interest rule. It is what is *not* in the record, or what is incapable of being reflected by the record, that prompts us to apply the *per se* conflict-of-interest rule in this case. Our concern is with the opinions [the attorney] *had already formulated* about the 'best interests of the children' when representing them and how those opinions might adversely impact his ability to later effectively represent [the mother] with 'undivided loyalty.' " (Emphases added.) *Id.*

The *S.G.* court further rejected the State's reliance on *D.B.*, which had found no *per se* conflict where the mother's attorney, who had previously served as the minor's guardian *ad litem*, did not simultaneously represent the minor and the mother, and the mother continued the attorney's representation after he informed her that he had represented the minor but did not think that there would be a conflict of interest. *D.B.*, 246 Ill. App. 3d at 492. The *S.G.* court declined to follow *D.B.* because it disagreed that only simultaneous representation can create a *per se* conflict of interest and because nothing in the record revealed any consultation between the attorney and the mother about the potential for a conflict or a knowing waiver of the potential conflict. *S.G.*, 347 Ill. App. 3d at 482.

We similarly conclude that *D.B.* does not control here. Like the court in *S.G.*, we see nothing in the record reflecting that respondent was informed of a conflict of interest or waived her right to conflict-free representation. Further, we disagree with *D.B.*'s conclusion that only simultaneous representation can create a *per se* conflict of interest. Clearly, a *per se* conflict would exist if, for example, the assistant State's Attorney assigned to petition for the termination of a respondent's parental rights left that office and was later appointed in the same proceedings to represent the respondent. See *People v. Kester*, 66 Ill. 2d 162, 167-78 (1977) (*per se* rule applied in criminal context where appointed defense counsel had previously appeared in same proceeding as assistant State's Attorney). Obviously, such representation is not simultaneous, but any off-the-record opinion the attorney may have developed about the respondent in his or her prior representation of the State might affect his or her ability to represent the respondent with "undivided loyalty." *In re Lackey*, 71 Ill. App. 3d 705, 707 (1979) (right to effective assistance of counsel entitles parent to "undivided loyalty" of his or her attorney).

To determine whether *S.G.* should control here, however, we address three considerations: (1) Herrmann represented respondent first and then Darius, not the other way around as in *S.G.*; (2) the record reflects that Herrmann's representation was even more limited than the guardian *ad litem*'s representation in *S.G.*; and (3) as the State puts it, termination proceedings are unique in that the single goal is the best interest of the child and, as such, they are not meant to be adversarial. While we address each in turn, we ultimately conclude that none of these considerations prevails and, accordingly, that the *per se* rule must apply.

First, unlike in *S.G.*, Herrmann appeared on respondent's behalf and then appeared on Darius's behalf. A conflict and resulting prejudice are clear if an attorney represents the child first,

possibly forming the opinion that it would be in the child's best interest for the respondent's rights to be terminated, and then the same attorney in the same proceedings represents the respondent. In contrast, the prejudice to respondent here is less obvious. Is respondent's right to conflict-free representation prejudiced if Herrmann no longer represents her? We conclude that it is.

We consider that off-the-record confidential communications between respondent and Herrmann likely occurred, that, in those conversations, Herrmann likely learned information that he would not otherwise have learned, and that he might have, in his interactions with respondent, formed an opinion of her that he would not otherwise have had the opportunity to formulate. Certainly, it is reasonable to presume that, as respondent's counsel, Herrmann at a minimum interviewed her and reviewed her file. As such, if Herrmann concluded from this confidentially gleaned information that respondent was unfit or that her rights should be terminated, he was subsequently placed in the unique position of being able to *use* this information when he represented Darius.[2] In contrast, if Herrmann represented only respondent, his obligation would have been to

_____

[2]We note that, in contrasting this case to *S.G.*, the State argues that the order of representation here did not prejudice respondent because the real question is whether Herrmann's prior representation of respondent impacted his ability to adequately represent to the *court* what would be in Darius's best interest, a question that it asserts respondent has no standing to raise. After all, it argues, "[a] guardian *ad litem* functions as the 'eyes and ears of the court' and not as the ward's," and the guardian's role "is not to advocate for what the ward wants but, instead, to make a recommendation to the court as to what is in the ward's best interests." *In re Mark W.*, 228 Ill. 2d 365, 374 (2008). We disagree that this scenario is devoid of prejudice to respondent. A guardian *ad litem* has the opportunity to directly advise the court about the best interest of the child unfettered

advocate only for respondent's interests. Thus, he would not have had the opportunity to use confidential information against respondent, his first client, even if unintentionally. Again, the critical focus of the *per se* conflict rule is the *presumption* that the circumstances themselves impair the attorney's ability to represent the first client, and the later client, with undivided loyalty. The *per se* nature of the rule, which requires no proof of prejudice, reflects that, in such a case, it would be impossible for the respondent to establish the prejudice, either because the prejudice does not appear in the record (*e.g.*, less aggressive tactics used to defend than otherwise would have been used) or even because the impact on the attorney was subconscious (*e.g.*, subconscious reluctance to attack pleadings). *S.G.*, 347 Ill. App. 3d at 480-81. Thus, we do not think that the order of representation here—where Herrmann had the opportunity to use against respondent's interests information or impressions he acquired in their confidential relationship—precludes application of the *per se* conflict rule.[3]

---

by the constraints of client wishes. Arguably, this *direct* access to provide the court with information or impressions that were developed in part while representing a respondent would be *more* prejudicial to the respondent who, if he or she had remained the attorney's client, would have retained some measure of control over the attorney's actions via the attorney-client relationship.

[3]We realize that our aforementioned conclusion regarding the prejudice here is arguably speculative and based on *potential* conversations, information gleaned, opinions formed, and use of the information. We feel compelled to note that our supreme court, in *Mark W.*, rejected an appellate court's findings of an *actual* conflict and attorney-client-privilege violations based, in part, on speculation. Nevertheless, while *Mark W.* and other cases (see, *e.g.*, *Hernandez*, 231 Ill. 2d at 144) caution against finding an *actual* conflict based on speculative prejudice, the issue here warrants a

Our second consideration regarding whether to apply the *per se* rule in this case arises from the limited nature of Herrmann's representation. In our view, if there is a spectrum upon which scenarios suggesting conflict might be measured in cases of dual, nonsimultaneous representation in termination cases, this case arguably presents the threshold. On the record, Herrmann's role in this case was very minimal: the record reflects that he appeared once for respondent and once for Darius, each time at proceedings where he did not perform any substantive, on-the-record representation. However, Herrmann's limited activity *on* the record is not dispositive. It is the off-the-record conduct that would have impacted Herrmann's decisions to act as he *did* on the record. Similarly, Herrmann's actions off the record might have directly prejudiced respondent. Again, we assume that Herrmann prepared, read the file, and spoke with respondent about the case. We do not know if Herrmann's thoughts or impressions formed while representing respondent were in any way communicated to Arnquist, who, on the record, *agreed* with the State that respondent was unfit and that her rights should be terminated.

---

different conclusion. First, while speculative allegations are impermissible in establishing an *actual* conflict—where a showing of prejudice is required—a showing of prejudice is irrelevant in a *per se* conflict situation. *Hernandez*, 231 Ill. 2d at 144. Second, the conflict issue that arose in *Mark W.* involved the attorney's potential representation of the same party in dual roles (as both her attorney and her guardian *ad litem*) not, as here, *different* parties with clearly defined competing interests. Third, the supreme court's opinion in *Mark W.* was partially based on the fact that the attorney never actually represented the client as her attorney, but only as her guardian *ad litem*. Here, we have an attorney who actually appeared on behalf of both parties.

The point, as previously discussed, is that the *per se* nature of the conflict rule makes irrelevant the length or nature of the representation, and it necessarily includes situations where prejudice might be impossible to establish. Indeed, in *S.G.*, the attorney, after representing the minor, represented the mother for *four years* with no signs in the record of anything but competent, dedicated, and completely loyal representation. *S.G.*, 347 Ill. App. 3d at 481. Nevertheless, the brevity of the attorney's representation of the minor did not preclude application of the rule or alter the fact that the rule's purpose is to protect against what is *not* reflected in the record. *Id.* Similarly, the court in *Hernandez,* rejecting the State's argument that the attorney did not have an active relationship with the party who created the conflict, stated, "the very nature of a *per se* conflict rule precludes inquiry into the specific facts of a case." *Hernandez*, 231 Ill. 2d at 150. The court cited other cases where the attorney's status *alone* engendered the conflict and inquiries into the degree or extent of the representation were unnecessary. *Id.* Further, the court held that "active representation" was simply unnecessary, and that conflicts may arise from counsel's " 'prior or current' " or " 'previous or current' " association, relationship, commitment, professional connection, or " 'some tie' " with both the "victim" and the defendant. *Id.* at 151. Accordingly, here, Herrmann's limited appearance and his failure to perform on the record any obviously prejudicial representation are irrelevant to a finding of a *per se* conflict.

Our third consideration in deciding whether to apply the *per se* conflict rule is that, as the State points out, the rule originated in criminal law and in relation to constitutional protections and, therefore, might not perfectly fit the unique three-party termination proceedings contemplated by the Juvenile Court Act and the Adoption Act. Proceedings under the Juvenile Court Act are not meant to be adversarial (705 ILCS 405/1—5(1) (West 2008)) and if, as the statutes contemplate, the

purpose of the proceedings is to consider the best interest of the child, the parties arguably do not have conflicting interests. Nevertheless, while this might be true in theory, we are hard-pressed to say that where the State and the guardian *ad litem* seek to terminate the parent's rights to the child, and the parent seeks to keep his or her rights, those interests are not conflicting. Indeed, and as noted in *S.G.*, the Juvenile Court Act itself contemplates the likelihood of conflicts of interest arising between minors and their parents and accordingly permits, and sometimes requires, courts to appoint guardians *ad litem* to serve the minors' interests. 705 ILCS 405/2—17 (West 2008); *S.G.*, 347 Ill. App. 3d at 478. Presumably, the trial court here recognized this inherent possibility and pursuant to the Juvenile Court Act appointed counsel from the "conflicts division" of the public defender's office to represent Darius.

We also note that, while the shared goal in juvenile proceedings is to serve the child's best interest, what that best interest is often depends on whose perspective is being considered. Here, as in *S.G.*, the State and the guardian *ad litem* (although *not* Herrmann, at least not on the record) agreed that it was in Darius's best interest that respondent's rights be terminated—a position diametrically opposed to respondent's. Thus, competing positions clearly may exist within the unified goal of best interest.

In sum, we find *S.G.*'s reasoning sound and see no compelling reason to depart from its conclusion. From a pragmatic standpoint, we agree with *S.G.* that the better rule is to find that Herrmann's representation of both respondent and Darius in these termination proceedings created a *per se* conflict. As stated by the court in *Hernandez,* "[a]pplication of the *per se* rule is not unworkable but rather straightforward and simple." *Hernandez,* 231 Ill. 2d at 147. A clear rule better informs attorneys that, while multiple attorneys from the public defender's office may

substitute to represent the same client, the *same* attorney may not during the proceedings appear on behalf of *different* clients.[4] Further, a clear rule will inform the trial court not to accept an appearance from an attorney who already, at some point during the proceedings, appeared on behalf of another party. Thus, here, we conclude that a *per se* conflict of interest requiring reversal arose when Herrmann appeared on both respondent's and Darius's behalf at different times during the same proceedings. Prejudice is presumed and respondent need not demonstrate that the conflict contributed to the judgments entered against her. As Herrmann's first appearance occurred after the petition to terminate parental rights was filed, we reverse the judgments of the trial court finding respondent unfit and terminating her parental rights. We remand for new hearings on the petition to terminate and for the appointment of new counsel consistent with this opinion.

Our conclusion should not be construed as insensitive to the importance of finality in juvenile proceedings. Rather, as the State conceded at oral argument, we do not pursue "finality at any cost." We remain mindful that a proceeding to terminate parental rights is a drastic measure and that the strict procedures contained in the Juvenile Court and Adoption Acts, including the right to be represented by counsel, are paramount. *In re E.B.*, 231 Ill. 2d 459, 463-64 (2008).

### III. CONCLUSION

---

[4] The State asserts that Herrmann "stepped up" at these proceedings, suggesting that he merely appeared to assist his colleagues who could not be present. To the contrary, Herrmann appeared *on behalf of* his clients. He did not, for example, represent to the court that respondent's (or Darius's) counsel was unavailable and that a continuance was needed. This distinction is critical because, in the latter example, Herrmann would be representing his office or his colleague, not a client. Accordingly, there would be no conflict.

For the foregoing reasons, the judgment of the circuit court of Winnebago County is reversed, and the cause is remanded.

Reversed and remanded.

JUSTICE HUTCHINSON, dissenting:

I generally agree with the analysis presented by the majority concerning the *per se* conflict of interest issue. I do not agree, however, that this court should have reviewed the issue. I do not believe that we should address the issue because the issue was never raised in the trial court, either during the series of hearings that followed the events in question or upon any motion for reconsideration. Accordingly, I do not believe that this issue has been preserved for review.

This court should not overlook forfeiture because the rules of civil procedure do not direct our consideration of this issue. See *In re Samantha V.*, 234 Ill. 2d 359 (2009). In *In re M.W.*, 232 Ill. 2d 408, 430 (2009), our supreme court explained that the forfeiture principles that apply in criminal proceedings also apply in proceedings under the Juvenile Court Act. A criminal defendant preserves an error for review by objecting to the claimed error at trial and raising the issue in a posttrial motion. *Samantha V.*, 234 Ill. 2d at 368, citing *M.W.*, 232 Ill. 2d at 430. As the *M.W.* court stated, a respondent's failure to object at trial forfeits consideration of the claimed error on appeal, unless the respondent can demonstrate plain error. *M.W.*, 232 Ill. 2d at 430.

In the present case, respondent forfeited review of this issue by not objecting at trial and by not including it in a posttrial motion. See *In re Madison H.*, 215 Ill. 2d 364, 379 (2005), citing *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (both a trial objection and a written posttrial motion raising the issue are necessary to preserve an issue for appellate review). This same premise was recently addressed by the Illinois Supreme Court. See *People v. Taylor*, 237 Ill. 2d 356 (2010)

(where a potential conflict of interest is not brought to the attention of the trial court, a defendant must establish that an actual conflict of interest adversely affected his lawyer's representation). Finally, an opinion rendered without trial court review of the issue would be purely advisory. See *In re Robert S.*, 213 Ill. 2d 30, 45 (2004) (stating that reviewing courts should not render advisory opinions).

The record in this case is complete as to the evidence presented and the trial court's findings. A careful review of that record reveals no actual conflict of interest that impacted respondent's case. Counsel who appeared consistently on behalf of respondent after attorney Herrmann was present for respondent's arraignment waged a steady and solid case on behalf of respondent. Indeed, respondent does not even raise the argument that an actual conflict of interest occurred.

Rather, the majority and respondent are concerned about what happened outside the record when the same assistant public defender stepped up on behalf of respondent one day and then stepped up approximately three months later on behalf of the minor. Had this representation of both parties during the termination of parental rights proceedings been addressed to the trial court during those proceedings or in a postjudgment motion, the trial court could have taken evidence, if necessary, to determine whether during Herrmann's brief representation any information had been revealed that compromised either respondent's case or the minor's case. During oral argument, the State noted that this case continued on for several months after Herrmann's representation of the minor and that during this time, no one raised the issue or apparently considered that the scenario raised an ethical problem or a conflict of interest.

By this dissent, I am not excusing this administrative mistake nor am I condoning it. The majority clearly identifies the dangers and potential constitutional dimensions of such confusion in representation during a termination of parental rights case. Furthermore, it is also obvious that the

-18-

office of the public defender involved in this case recognizes that it must be cautious in representing parties in complicated, multiparty cases, as it has created various "Conflicts" divisions within its ranks. However, without more information and a proper resolution at the trial court level, I believe that respondent has forfeited this issue.

Finally, I remain very concerned about stability on behalf of the minor here. Our supreme court has established rules for trial courts and rules for reviewing courts to expedite these matters, to give minors, whose lives are hanging in the balance, a decent chance at a stable, solid future as quickly as possible. See Ill. S. Ct. R. 311 (eff. Feb. 26, 2010). The majority is remanding this case for new hearings on the petition to terminate respondent's parental rights. The last hearing in this case took place approximately six months ago, and based upon responses from counsel during oral argument, respondent and her efforts have not been monitored by any child welfare entity since the close of the proceedings. Furthermore, the trial court was emphatic in its ruling that respondent had "never been to a point where the child could be returned to her care" during the monitored periods. Additionally, the child welfare representative testified emphatically that it was in the best interest of the minor to be adopted into a loving and stable home and that such an opportunity was available for him.

If this matter must be remanded, and as I have earlier indicated, I do not believe that it should because the issue of a *per se* conflict of interest was not preserved, a more limited hearing appears appropriate. Assuming that the trial court and the attorneys involved in the presentation of this case are available, I would recommend upon remand that the trial court conduct a hearing to determine what, if any, information or knowledge was exchanged that could have compromised respondent's case or the minor's case. If the trial court determined that a conflict of interest did exist, then I believe new hearings on the petition to terminate respondent's parental rights should be held.