No. 2—10—1105
Opinion filed May 11, 2011

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* QUADAYSHA C., BOBBY P., | ) | Appeal from the Circuit Court of |
| ZARRIEA B., and ZYLISS H., Minors | ) | Winnebago County. |
| | ) | |
| | ) | Nos. 07—JA—233 |
| | ) | 07—JA—234 |
| | ) | 07—JA—235 |
| | ) | 07—JA—236 |
| | ) | 07—JA—237 |
| | ) | |
| (The People of the State of Illinois, | ) | Honorable |
| Petitioner-Appellee, v. Nicole H., | ) | Patrick L. Heaslip, |
| Respondent-Appellant). | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court, with opinion.
Justices Hutchinson and Schostok concurred in the judgment and opinion.

**OPINION**

Respondent, Nicole H., appeals from the trial court's order terminating her parental rights to her minor children Quadaysha C., Bobby P., Zarriea B., and Zyliss H. We reverse and remand.

This case involves 5 of Nicole's 10 children. Quadaysha, Bobby, Zarriea, Zyliss, and Jarrell H. (who is not a subject of this appeal) were under the guardianship of Nicole's sister, Denise. On September 7, 2007, the State filed petitions alleging that Quadaysha and Jarrell were abused and neglected minors because Denise inflicted excessive corporal punishment upon them. The State alleged that Bobby, Zarriea, and Zyliss were neglected because of the injurious environment caused by the excessive punishment. The court appointed a "Conflicts I" attorney for Nicole and appointed

the office of the public defender as guardian *ad litem* (GAL) for the children. The children were placed in shelter care, and the Department of Children and Family Services (DCFS) was granted temporary custody and guardianship. On the next court date, the trial court appointed the Court Appointed Special Advocate (CASA) as GAL for the children and appointed the office of the public defender as counsel for CASA.

After a trial, which Nicole did not attend because she had just given birth to another child, the trial court found that Quadaysha and Jarrell were abused minors and that the other three children were neglected. The case was continued to January 9, 2008, for a dispositional hearing. Nicole failed to appear for the dispositional hearing. When the court asked everyone in the courtroom to identify himself or herself, Assistant Public Defender Kristin Anderson stated that she was "in for Rob Simmons on behalf of CASA." Both CASA and Catholic Charities filed reports with the court and included recommendations for the dispositions. Both recommended that guardianship and custody be granted to DCFS; CASA also recommended, among other things, that Nicole have supervised visitation with her children and that she be ordered to submit to random drug and alcohol testing. Off-the-record conferences were held before the parties made their arguments and recommendations. The State asked the court to take judicial notice of the reports and recommended that custody and guardianship of the five children be granted to DCFS, with discretion to place them with a relative or in traditional foster care. All parties would be required to cooperate with the service plan. When asked by the court if she was "in agreement on behalf of the children," Anderson replied, "Yes." The court then granted custody and guardianship to DCFS, with discretion to place the children with a relative or in traditional foster care. The court entered "[g]eneral orders of cooperation." The court

also ordered the parents[1] to remain drug- and alcohol-free, to submit to random drug drops and Breathalyzer tests, to submit to all requested assessments, and to follow up with any recommended treatments.

Beginning with the first permanency hearing, held on July 8, 2008, Anderson, who had appeared on behalf of CASA at the dispositional hearing, appeared on behalf of Nicole. This representation lasted through March 12, 2010, by which time the State had filed petitions to terminate Nicole's parental rights. Another appointed attorney appeared on Nicole's behalf during the hearing on the petitions. The trial court subsequently found Nicole to be an unfit parent and concluded that it was in the best interests of the children, except for Jarrell, that Nicole's parental rights be terminated. The permanency goal for Quadaysha, Bobby, Zarriea, and Zyliss was then changed to adoption. This appeal followed.

Nicole first contends that she received inadequate assistance of counsel because Anderson represented both her and CASA, the children's GAL, during the course of these proceedings.

This court has held that a *per se* conflict of interest requiring the reversal of a termination of parental rights arose when the same attorney appeared on behalf of both the respondent mother and the minor at different times during the same proceedings. See *In re Paul L.F.*, No. 2—10—0749 (Ill. App. Mar. 24, 2011); *In re Darius G.*, 406 Ill. App. 3d 727 (2010). In *Darius G.*, we propounded a "clear rule" that "the *same* attorney may not during the proceedings appear on behalf of *different* clients." (Emphases in original.) *Darius G.*, 406 Ill. App. 3d at 738. In such a situation, "[p]rejudice is presumed and respondent need not demonstrate that the conflict contributed to the judgments entered against her." *Darius G.*, 406 Ill. App. 3d at 739. The application of such a rule will "inform

---

[1]None of the childrens' fathers is involved in this appeal.

the trial court not to accept an appearance from an attorney who already, at some point during the proceedings, appeared on behalf of another party." *Darius G.*, 406 Ill. App. 3d at 738. Both the trial court and appointed counsel in juvenile proceedings must remain aware of the parties' representation; the termination of parental rights is a drastic measure, and the strict procedural requirements adopted to regulate such proceedings "are paramount." *Darius G.*, 406 Ill. App. 3d at 739. The *per se* rule, if properly followed, prevents attorneys from being placed in the untenable and potentially unethical position of having their loyalties divided by representing multiple parties in the same proceedings. *Paul L.F.*, slip op. at 7.

The State argues that *Darius G.* also propounded an exception to the *per se* rule that should apply in this case if this court follows the precedents set in *Darius G.* and *Paul L.F.* In *Darius G.*, this court noted:

> "The State asserts that Herrmann [the conflicted attorney] 'stepped up' at these proceedings, suggesting that he merely appeared to assist his colleagues who could not be present. To the contrary, Herrmann appeared *on behalf* of his clients. He did not, for example, represent to the court that respondent's (or Darius's) counsel was unavailable and that a continuance was needed. This distinction is critical because, in the latter example, Herrmann would be representing his office or his colleague, not a client. Accordingly, there would be no conflict." (Emphasis in original.) *Darius G.*, 406 Ill. App. 3d at 738 n.4.

The State asserts that, because Anderson stated that she was "in for" her colleague, there was no *per se* conflict. We first note that, when Anderson was called upon to identify herself at the dispositional hearing, her full answer was, "Kristin Anderson in for Rob Simmons *on behalf of CASA.*" (Emphasis added.) Second, Anderson did not merely ask for a continuance because Simmons was unavailable,

as in the hypothetical in *Darius G.*; she agreed "on behalf of the children" with the proposed dispositions of the abuse and neglect petitions. The State's attempt to apply the *Darius G.* "exception" is disingenuous, improperly applies the quoted text to the record in this case, and is not well taken.

The State further attempts to distinguish *Darius G.*, but to no avail. In *Darius G.*, the conflicted attorney appeared first on the respondent's behalf and later on the minor's behalf; this court noted:

"We consider that off-the-record confidential communications between respondent and Herrmann likely occurred, that, in those conversations, Herrmann likely learned information that he would not otherwise have learned, and that he might have, in his interactions with respondent, formed an opinion of her that he would not otherwise have had the opportunity to formulate. Certainly, it is reasonable to presume that, as respondent's counsel, Herrmann at a minimum interviewed her and reviewed her file. As such, if Herrmann concluded from this confidentially gleaned information that respondent was unfit or that her rights should be terminated, he was subsequently placed in the unique position of being able to *use* this information when he represented Darius. In contrast, if Herrmann represented only respondent, his obligation would have been to advocate only for respondent's interests. Thus, he would not have had the opportunity to use confidential information against respondent, his first client, even if unintentionally." (Emphasis in original.) *Darius G.*, 406 Ill. App. 3d at 735-36.

The State notes that the record clearly reflects that Nicole was not present at the dispositional hearing and does not reflect whether the minors were present. According to the State, it is important that

Anderson never saw Nicole, and presumably could not form an opinion of her, before she began to represent her. This argument misses the point; that portion of the *Darius G.* analysis was necessary because the attorney in that case represented the respondent *before* he represented the minor. Where, as here, the attorney represents the minor first, "possibly forming the opinion that it would be in the child's best interest for the respondent's rights to be terminated," the "conflict and resulting prejudice are clear." *Darius G.*, 406 Ill. App. 3d at 735.

The State also points out that the "record reflects nothing less than zealous advocacy by Anderson on respondent's behalf." Again, this argument misses the point. The *per se* nature of the rule requires no proof of prejudice. *Darius G.*, 406 Ill. App. 3d at 736; see also *In re S.G.*, 347 Ill. App. 3d 476, 481 (2004). "It is what is not in the record, or what is incapable of being reflected by the record, that prompts us to apply the *per se* conflict-of-interest rule in this case." *S.G.*, 347 Ill. App. 3d at 481. Thus, while the record may show numerous examples of Anderson's zealous and capable advocacy on Nicole's behalf, such examples do not overcome the presumed prejudice that arises from the divided loyalties entailed by representing more than one party in a proceeding, and they are not relevant to our analysis.

The State proposes an alternative process to follow when an attorney has represented multiple parties in a juvenile proceeding, including, at most, a "limited remand" with the burden on the respondent to show " 'whether the risk of a conflict colored the [parties'] representation.' " See *People v. Hardin*, 217 Ill. 2d 289, 302 (2005). However, we have concluded that applying the *per se* rule is the simple way to resolve this recurring problem, and it should be followed. *Paul L.F.*, slip op. at 7. Therefore, we conclude that the clear rule of *Darius G.* applies here. Prejudice to Nicole is presumed in Anderson's prior representation of the children's GAL, and we reverse the judgments

of the trial court finding her to be an unfit parent and terminating her parental rights and remand the cause for further proceedings.

Because of our disposition of this issue, we need not consider respondent's other contentions.

Reversed and remanded.